[Civ. No. 11899.   First Dist., Div. One.   Jan. 17, 1942.]

NACKEY S. MEANLEY, as Administratrix, etc., Respondent, v. CHARLES J. McCOLGAN, as Franchise Tax Commissioner, etc., Appellant.

Earl Warren, Attorney General, and H. H. Linney and Valentine Brookes, Deputies Attorney General, for Appellant.

Irve C. Boldman for Respondent.

PETERS, P. J.—Defendant Franchise Tax Commissioner appeals from a judgment in favor of plaintiff ordering that certain state income taxes paid by plaintiff under protest be refunded. The action involved several different items and the judgment entered was a lump sum money judgment. Defendant has appealed from the entire judgment. On this appeal, however, appellant concedes the correctness of the judgment in part, and attacks only the items hereafter mentioned.

So far as the issues involved on this appeal are concerned, the amended complaint alleges that Ellen Browning Scripps died testate on August 3, 1932; that the will of decedent was duly admitted to probate; that certain persons who later died were appointed executors; that plaintiff was appointed administratrix with the will annexed in June of 1939; that the executor of the estate employed two sets of attorneys to represent him as counsel in the administration of the estate; that statutory attorneys' fees allowed to the executor totaled $33,287.26; that the attorneys rendered extraordinary services "in the adjustment and payment of extensive and complicated estate and inheritance taxes, and in collecting income and conserving and managing the estate for the production of income as distinguished from the usual administrative duties incident to the collection and distribution of the assets and payment of the debts of the estate;" that the total attorneys' fees paid by the executor was $90,000. The action involves a portion of the above-mentioned fees paid for extraordinary services of the attorneys for the taxable years 1936-1937, and 1937-1938. The amended complaint alleges that during 1936-1937 $11,712.74 was paid to one attorney for his extraordinary services, and that during the second period $17,500 was paid

to the other firm for such services. These sums were claimed by the estate as deductions from the income of the estate as a business expense. The complaint further alleges that the Franchise Tax Commissioner refused to allow the $11,712.74 for 1936-1937 as a deduction and reduced the $17,500 to $8,750; that the taxpayer paid a tax on these sums under protest, and instituted this action for a refund.

The trial court found that the above allegations of the amended complaint were true, and, as a conclusion of law, stated that the extraordinary attorneys' fees were paid "for extraordinary services rendered to the executor . . . in carrying on a trade or business," and, further, that the estate during the period here involved "was engaged in carrying on a trade or business in the collecting of income and in conserving and managing the assets of the estate for the production of income." Based on these findings and conclusions it was determined that the items involved were deductible and a refund ordered.

The question presented on this appeal is whether the extraordinary attorneys' fees are deductible from the income of the estate under the provision of the state income tax act which permits deductions from gross income to be made for "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. . . ." (Personal Income Tax Act of 1935, Stats. of 1935, p. 1090, at p. 1097, §8 (a) ; Deering's General Laws [1937], Act 8494.) There can be no doubt that the attorneys' fees paid were "ordinary and necessary expenses," within the meaning of the above-quoted section, so that the real question presented is whether the estate was engaged "in carrying on any trade or business."

The record shows the following as to the activities of the estate: The assets of the estate consisted of bonds of the value of $286,550; notes of the value of $2,774,641; stocks of the value of $770,235; real property of the value of $201,933; miscellaneous $21,064. From 1935 to 1939 some of the promissory notes were renewed from time to time, some refinanced, some paid off, and some new notes issued. From 1935 to 1939 the estate received $4,894,500, as repayment on the principal of the notes, $713,140 in interest, $276,937 in dividends, $280,540 from the sale of bonds, $181,950 from the sale of stock, and $7,000 from rentals of its real property.

From 1935 to 1939 the executor employed four persons for the management of the estate in addition to the attorneys whose fees are involved in this proceeding. At least two of these employees had been employed by the testatrix in similar capacities since 1924. The attorneys rendered constant services to those in charge of the affairs of the estate, not only in connection with tax matters but in connection with the management of the estate generally.

The question as to whether such activities constitute the carrying on of a trade or business has frequently been presented to the federal courts in interpreting a similar provision of the Federal Income Tax Act from which our section was copied. In one sense, any activity that has for its aim the production of income or the conserving of assets is the carrying on of a "business." Such a definition has in fact been given by the United States Supreme Court in interpreting a different statute. (*Flint* v. *Stone Tracy Co.*, 220 U. S. 107 [31 S. Ct. 342, 55 L. Ed. 389].) That court has determined, however, that the words "trade or business" as used in the Federal Income Tax Act have a much more limited meaning. It has been held that active concern over one's own financial interests is not sufficient to constitute the carrying on of a trade or business within the meaning of the income tax law; that before an individual or an estate can be held to be engaged in a trade or business there must be activity for profit by service to the general public. Mr. Justice Frankfurter clearly expressed this thought in his concurring opinion in the case of *Deputy* v. *du Pont*, 308 U. S. 488 [60 S. Ct. 363, 84 L. Ed. 416], at p. 499, where he stated: "To avail of the deductions allowed by §23 (a), it is not enough to incur expenses in the active concern over one's own financial interest. '. . . carrying on any trade or business,' within the contemplation of §23 (a), involves holding one's self out to others as engaged in the selling of goods or services. This the taxpayer did not do. Expenses for transactions not connected with trade or business, such as an expense for handling personal investments, are not deductible."

This concept has been applied to a variety of factual situations. In *Van Wart* v. *Commissioner*, 295 U. S. 112 [55 S. Ct. 660, 79 L. Ed. 1336], it was held that an attorney's fee paid by a guardian "for conducting litigation to secure income

for his ward'' (p. 113) was not a business expense. In this case the commissioner and Circuit Court of Appeals had held the expenditure personal, while the Board of Tax Appeals had held it deductible as a business expense.

*Higgins* v. *Commissioner of Internal Revenue,* 312 U. S. 212 [61 S. Ct. 475, 85 L. Ed. 783], involved a taxpayer with extensive interests in stocks and bonds and some real estate. He devoted a considerable portion of his time to managing his investments. He maintained an office for the supervision of his investments and paid his employees there employed $16,000 per year. He claimed that the salaries of these employees and expenses of his office were deductible as a business expense. The commissioner, Board of Tax Appeals, and circuit court held that these items were not deductible as business expenses except in so far as they were based on activities in connection with the rental of the real property. This position was affirmed by the United States Supreme Court. The court specifically rejected the contention of the taxpayer that where an investor continuously and regularly devotes his time to his investments he is engaged in a business, and adopted the contention of the commissioner that ''mere personal investment activities never constitute carrying on a trade or business, no matter how much of one's time or of one's employees' time they may occupy.'' (p. 477.) The court specifically refused to follow the definition of ''business'' contained in its decision in *Flint* v. *Stone Tracy Co., supra,* and expressly disapproved that definition for income tax purposes. The court emphasized that no matter how large the estate may be, or how continuous or extended the work in connection therewith may be, such facts do not establish as a matter of law, that the person involved is carrying on a business.

This case was followed by *City Bank Farmers Trust Co.* v. *Helvering,* 313 U. S. 121 [61 S. Ct. 896, 85 L. Ed. 1227]. Here the question presented was whether two testamentary trusts aggregating $10,000,000 were engaged in a trade or business. The specific question presented was whether trustees' fees paid to the trustees for handling the extensive investments of the trusts were deductible as a business expense. The Board of Tax Appeals and the Circuit Court of Appeals had denied the deduction. This was affirmed on the authority

of the Higgins case, *supra*. The important holding in the case, so far as the problem involved in the appeal in the instant case is concerned, was that in determining whether or not a testamentary trust is engaged in the carrying on of a trade or business the same tests must be applied as are applied to an individual.

In all of the above cases the trier of the fact had found that the item in dispute was not a business expense, and in each case the Supreme Court of the United States emphasized that the question was one of fact, and that they were affirming the lower court. However, in *United States* v. *Pyne*, 313 U. S. 127 [61 S. Ct. 893, 85 L. Ed. 1231], that court held, as a matter of law, that activities substantially similar to those involved in the instant case did not constitute the carrying on of a trade or business, and reversed the court of claims that had held to the contrary. In the Pyne case the question involved was whether an estate could deduct attorneys' fees incurred in the administration and management of the investments of the estate. The court of claims, the trier of the facts, had held that such fees were properly deductible as a business expense. The facts were that the decedent, before his death, was a financier with extensive interests. He maintained an office with seven employees to assist him in handling his investments. After his death the estate adopted substantially the same method of operation. The lower court found that the attorney advised the executors with reference to both legal and economic problems that arose in connection with the business activities of the estate, with reference to tax matters, and with reference to investments. The court held that these activities did not constitute the carrying on of a trade or business as those terms are used in the income tax act, again held the definition of business contained in *Flint* v. *Stone Tracy Co.* inapplicable to income tax cases, reaffirmed its holding in the Higgins case, *supra,* and stated (p. 895):

"Nor can the judgment of the Court of Claims be supported by that court's statement that the executors were engaged 'in the business of conserving the estate and protecting its income.' Such activities are the traditional duty of executors. Executors who engage actively in trade and business are the exception and not the rule. Rather obviously, there could be clear cases where executors 'carry on . . . busi-

ness' by continuing to operate a store, a factory or some other well known, well marked type of business activity. But in the absence of evidence showing activities coming within the general acceptation of the concept of carrying on a trade or business, it cannot be said as a matter of law that an executor comes into this category merely because he conserves the estate by marshalling and gathering the assets as a mere conduit for ultimate distribution. And determination of what constitutes 'carrying on . . . business' under the Revenue Act does not depend upon the size of the estate or the number of people whose services are required in order properly to conserve it.''

If the reasoning adopted by the United States Supreme Court in the above cases is sound, it requires a reversal of the judgment in the instant case. It should be stated that the decision in the instant case was rendered by the trial court before the United States Supreme Court had decided the Higgins, City Bank Farmers Trust Co. and the Pyne cases, *supra*. The record discloses that the trial court relied partially at least on the lower court's decision in the Pyne case which was favorable to the taxpayer and which contained a definition of doing business consonant with the taxpayer's contentions in the instant case.

The above decisions of the United States Supreme Court are, of course, not binding on this court as to the proper interpretation of the state statute. Although the state statute was copied from the federal statute, the decisions having been rendered subsequent to such adoption constitute but argumentative authority, and are not binding authority as to the proper interpretation of the state statute. However, such decisions of the highest court in the land are obviously entitled to great weight in interpreting identical language appearing in a state statute. There is a strong public policy favorable to interpreting similar statutes dealing with the same subject matter in a similar fashion. For this reason, and because we are convinced that the reasoning of the Supreme Court is sound, we are of the opinion that the activities of the estate here involved do not constitute the carrying on of a trade or business within the meaning of the state income tax statute.

Respondent urges that the Pyne and other cases cited, *supra*, only hold that activities aimed at conserving an

estate and preparing it for distribution do not constitute engaging in a trade or business, but that activities aimed at producing income should be held to constitute engaging in a trade or business. This is a far too technical interpretation of these cases. A fair reading of them demonstrates that merely taking care of personal investments, no matter how extensive, and how much time and help are required, does not constitute the engaging in a trade or business—to reach that status within the meaning of the income tax law there must be activity for a profit in connection with dealings directly or indirectly with the general public.

As already pointed out, the estate owned, managed and rented some real property. That activity admittedly constitutes the carrying on of a trade or business. No attempt was made by the plaintiff taxpayer to segregate the portion of the attorneys' fees involved attributable to the real estate activities. The commissioner did allow a deduction of $8,750 to be made. Whether this was done on the theory that that sum was reasonably attributable to the real estate activities does not appear. Such deduction constitutes approximately one-third of the attorneys' fees here involved. Considering the small amount of real property in the estate as compared with the total estate it would appear that this deduction is amply sufficient to take care of any activities in connection with the real property. However, if the taxpayer desires to offer proof that more than this amount was attributable to the real property activities of the estate he should be permitted to do so.

As already pointed out, the action involved several items in addition to the attorneys' fees. The trial court rendered a lump sum judgment. The commissioner does not challenge the correctness of the refund except as to the attorneys' fees items. The refund as to all the other items should be affirmed. However, the findings, conclusions, and judgment will have to be modified, and, if the taxpayer be so advised, a new trial had on the issue above-discussed.

The judgment is reversed with instructions to the trial court to proceed as in this opinion indicated.

Knight, J., and Ward, J., concurred.