## DOCKENDORFF v. UNITED STATES.

### No. 48516.

United States Court of Claims.

June 6, 1949.

WHITAKER, Judge, dissenting.

Briggs G. Simpich, Washington, D. C., for plaintiff.

J. W. Hussey, Washington, D. C., and Theron Lamar Caudle, Asst. Atty. Gen. (Andrew D. Sharpe and A. F. Prescott, Washington, D. C., on the brief), for defendant.

Before JONES, Chief Judge, and MADDEN, HOWELL, LITTLETON and WHITAKER, Judges.

JONES, Chief Judge.

Plaintiff sues to recover additional income and victory taxes assessed by the Commissioner and paid by plaintiff for the calendar year 1942.

Plaintiff, taxpayer, was a member of a partnership known as the Black Diamond Steamship Company. The partnership operated a fleet of eight ocean-going vessels. It operated its business and reported its income for tax purposes on the basis of a fiscal year ending September 30. Plaintiff filed his individual income tax return on a calendar year basis.

On October 17, 1941 (fiscal year 1941–1942), the partnership sold two of its vessels for a total consideration of $1,300,000. The vessels had been acquired by the partnership some twelve months previously and had been used in the partnership business. Under the then existing provisions of the Internal Revenue Code, 26 U.S.C.A., the profit derived from this sale represented ordinary income to the partnership and was so reported in the partnership's information return for its fiscal year ending September 30, 1942. The profit was determined by the Commissioner of Internal Revenue to be $535,508.66 and plaintiff does not dispute this figure. Plaintiff's distributive share of this amount was $80,326.30.

On October 21, 1942, the Revenue Act of 1942, 56 Stat. 798, was enacted. Section 101 of that act provided that the amendments to the Internal Revenue Code made by the act should be applicable with respect to taxable years beginning after December 31, 1941, unless otherwise expressly provided. Section 117 of the Code, relating to capital gains and losses was amended, reducing the holding period of capital assets to six months and providing that the percentage to be taken into account with respect to gain or loss on the sale or exchange of capital assets should be 100 percent for assets held not more than six months, and 50 percent in the case of assets held for more than six months. A new subsection (j) was added to Section 117, as follows:

"(1) Definition of property used in the trade or business. For the purposes of this subsection, the term 'property used in

the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(*l*), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * *

"(2) General rule. If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion * * * of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. * * *"

It is undisputed that the two vessels sold by the partnership in 1941 had been owned for more than six months, were property used in the trade or business and were subject to the allowance for depreciation provided for in Section 23(*l*) of the Code, and that the recognized gains from the sale of the property exceeded the recognized losses from such source.

In his individual income tax return for the calendar year 1942, plaintiff reported his share of the profits from the sale as a long-term capital gain, taking into account only 50 percent thereof, on the theory that certain amendments to Supplement F of the Code (discussed in detail hereinafter) required the application by plaintiff of Section 117(j) in the computation of his individual tax liability for the calendar year 1942. The Commissioner of Internal Revenue and the defendant take the position that the transaction in question is governed by Section 117 as it existed prior to the amendment contained in the 1942 act and that accordingly the gain realized constituted ordinary income which must be re-ported in full in plaintiff's individual return. The question thus presented is, which law is applicable to the gain from the partnership transaction for the purpose of computing the individual partner's income tax liability for the calendar year 1942?

Defendant bases its contention on Section 101 of the Revenue Act of 1942 which reads as follows:

"Sec. 101. Taxable Years to Which Amendments Applicable.

"Except as otherwise expressly provided, the amendments made by this title shall be applicable only with respect to taxable years beginning after December 31, 1941."

Thus, defendant argues, since the taxable year of the partnership began *prior to* December 31, 1941, the law in effect at the beginning of that taxable year must apply to the computation of the partnership net income. Defendant further relies on Section 188 of the Code which provides:

"Sec. 188. Different Taxable Years of Partner and Partnership.

"If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner."

It is defendant's position that the partner must include in the computation of his net income for his calendar year his distributive share of the net income of the partnership *computed under the law applicable to the partnership's taxable year* and that the 1942 act cannot apply to such computation of partnership income because the partnership's taxable year began prior to December 31, 1941.

Plaintiff contends that partnerships pay no income tax, but merely file information returns, that Sections 117(j) and 182(b) of the Internal Revenue Code, 26 U.S.C.A. §§ 117(j), 182(b), determine the tax to be paid by the individual partner on his distributive share of the profit from the sale of vessels; that Supplement F when read

as a whole constitutes an exception to the general rule contained in Section 101, and that Section 188 as it appears in the Code does not provide that partnership net income must be computed in accordance with law in effect prior to January 1, 1942.

The cases cited by the parties are not decisive of the problem here involved, nor are they particularly helpful in its solution. We have accordingly examined carefully the provisions of the act of 1942 and of previous revenue acts with respect to the treatment of capital gains and losses and of partnerships under Supplement F.

The Internal Revenue Code, as amended by the Revenue Act of 1942, contains the following provisions with which we are concerned in this case, in addition to Section 117(j) quoted above:

"Sec. 4.  Special classes of taxpayers.

"The application of the General Provisions and of Supplements A to D, inclusive, to each of the following special classes of taxpayers, shall be subject to the exceptions and additional provisions found in the Supplement applicable to such class, as follows:

\* \* \* \* \* \*

"(b) Members of partnerships—Supplement F.

\* \* \* \* \* \*

"Sec. 181.  Partnership not taxable.

Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity.

"Sec. 182.  Tax of partners.

In computing the net income of each partner, he shall include, whether or not distribution is made to him—

\* \* \* \* \* \*

"(b) As part of his gains and losses from sales or exchanges of capital assets held for more than 6 months, his distributive share of the gains and losses of the partnership from sales or exchanges of capital assets held for more than 6 months.

"(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b).

"Sec. 183.  Computation of partnership income.

"(a) General rule.  The net income of the partnership shall be computed in the same manner and on the same basis as in the case of an individual, except as provided in subsections (b) and (c).

"(b) Segregation of items.

"(1) Capital gains and losses.  There shall be segregated the gains and losses from sales or exchanges of capital assets.

"(2) Ordinary net income or loss.  After excluding all items of gain and loss from sales or exchanges of capital assets, there shall be computed—

"(A) An ordinary net income which shall consist of the excess of the gross income over the deductions; or

"(B) An ordinary net loss which shall consist of the excess of the deductions over the gross income.

\* \* \* \* \* \*

"Sec. 187.  Partnership returns.

"Every partnership shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowed by this chapter and such other information for the purpose of carrying out the provisions of this chapter as the Commissioner with the approval of the Secretary may by regulations prescribe, and shall include in the return the names and addresses of the individuals who would be entitled to share in the net income if distributed and the amount of the distributive share of each individual.  The return shall be sworn to by any one of the partners.

"Sec. 188.  Different taxable years of partners and partnerships.

"If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner."

Section 117(j) has been described above.

Prior Acts.

The Revenue Act of 1938 contained substantially similar provisions. 26 U.S.C.A. Int.Rev.Acts, page 1001 et seq. Section 1 of that act provided as follows:

"Application of title.

"The provisions of this title shall apply only to taxable years beginning after December 31, 1937. Income, war-profits, and excess-profits taxes for taxable years beginning prior to January 1, 1938, shall not be affected by the provisions of this title, but shall remain subject to the applicable provisions of prior revenue Acts, except as such provisions are modified by Title V of this Act or by legislation enacted subsequent to this Act."

Section 4, subsections (a–h), was identical with Section 4 of the present Code. Section 183 provided in subdivision (b) that the partnership should segregate its short-term capital gains and losses, and its long-term capital gains and losses, and compute therefrom the net short-term or long-term capital gain or loss. Section 182 provided that the individual partner should include in computing his net income (a) as part of his short-term capital gains or losses, his distributive share of the net short-term capital gain or loss of the partnership and (b) follow the same procedure with respect to the partnership net long-term capital gain or loss. The capital assets section (117) did not contain subsection (j) and provided for longer holding periods with three different percentages to be taken into account with respect to gains or losses, in computing net income. Section 188 contained a second paragraph (omitted from the Code and not contained in the Revenue Act of 1942) which read as follows:

"Sec. 188.

\*    \*    \*    \*    \*    \*

"(b) Partnership year beginning in 1937. —If the taxable year of the partnership begins before January 1, 1938, and the taxable year of a partner begins after December 31, 1937, the computation of the net income of the partnership, and the inclu-

sions with respect to the partnership net income, in computing the net income of such partner, shall be made by the method provided in sections 182 and 183 of the Revenue Act of 1936 and not by the method provided in sections 182 and 183 of this Act."

The Revenue Acts of 1934 and 1936, 26 U.S.C.A.Int.Rev.Acts, pages 664 et seq., 819 et seq., did not require the segregation of items by the partnership in Section 183, and did not permit the offset of partnership net capital losses against the individual partner's net gains. This represented a departure from the provisions of the 1932 act, 26 U.S.C.A.Int.Rev.Acts, page 545, which had permitted such offsets. Section 188 of the 1934 act contained a subsection (b) providing that partnership net income for a taxable year beginning before January 1, 1934, should be computed under the terms of the Revenue Act of 1932 except that the provisions of the 1934 act relating to capital net gains and losses should be applied. Section 1 of the Revenue Act of 1934 provided that the title should apply to taxable years beginning after December 31, 1933. Section 4, relating to special classes of taxpayers, including partnerships, was substantially like Section 4 in the Internal Revenue Code as amended by the Revenue Act of 1942.

Assuming Section 1 of the Revenue Acts of 1934 and 1938 and Section 101 of the Revenue Act of 1942 to state the general rule, i. e., that the new revenue act shall apply only to taxable years beginning after December 31 of the year just prior to the effective date of the new act, does Supplement F, involving one of the special classes of taxpayers enumerated in Section 4 of the Code and the various acts, spell out a special rule which is an exception to such general rule?

In considering Supplement F of the Revenue Act of 1938, it seems quite clear that subdivision (b) of Section 188, in conjunction with Sections 182 and 183, is an exception to the rule expressed in subdivision (a).[1] Section 188(b) of the act of

---

[1] In this connection, it is worth noting that in Supplement E, dealing with common trust funds, which, for tax purposes are treated exactly as are partnerships, 169 (g) (1) is identical with 188 (a), and 169 (g) (2), which is identical with 188 (b), is actually labeled "Exception".

1938 says, in substance, that if the taxable year of the partnership begins prior to January 1, 1938, partnership net income and the inclusions therefrom in computing the partner's net income, shall be governed by the Revenue Act of 1936 "and not by the method provided in sections 182 and 183 of this Act." Thus it appears that Section 188(b) of the Revenue Act of 1938 says in substance exactly the same thing as to partnerships that Section 1 of that act says generally, i. e., that taxable years beginning prior to December 31, 1937, shall be governed by the applicable provisions of the prior revenue act. What, then was the purpose of subsection (b)? Its evident purpose was to provide an exception to the special rule contained in the preceding paragraphs of Supplement F, which special rule is in turn an exception to the general rule stated in Section 1. If that is so, then the omission of subsection (b) from Section 188, in the Revenue Act of 1942, leaves the special rule unexcepted to.

In deciding whether the provisions of Supplement F in the Revenue Act of 1942 constitute an exception to the general rule of Section 101 of that act, the following matters must be borne in mind. Section 4 of the Code contemplates that exceptions to the general provisions may be made in connection with special classes of taxpayers, including members of partnerships. A partnership, by express provision of the statute, is not a taxpayer. It is merely a tax-computing entity and a possible source of gain or loss to the individual partner. Tax liability for partnership income rests solely with the individual partner and that liability attaches whether the income is distributed to the partner or not. The taxable year of the partnership is an accounting period at the end of which period it can be determined what precisely is the distributive share of each individual partner. Pursuant to Section 182(b), the taxpayer (individual partner) in this case was required to include in his individual income tax return his distributive share of the gain of the partnership from the sale of a capital asset held for more than six months.

We believe that the provisions of Supplement F in the Revenue Act of 1942

constitute an exception to the general rule of Section 101 of that act with respect to the computation of partnership income for the fiscal year beginning in 1941 and ending in 1942, and that this exception is in the interests of uniformity and is in accord with the circumstance that the individual partner is the real taxpayer.

This conclusion is strengthened by the fact that whenever Congress wished partnership income (whose fiscal year began prior to the effective date of a revenue act) to be computed under a law different from that governing the individual partner's income from other sources, it so provided in subsection (b) of Section 188. Without such a subsection (b), this partner was compelled by Section 182(b) of the 1942 act to report as part of his gain from the sale of partnership capital assets held for more than six months, his distributive share of the gain from such sale.

## Legislative History.

The legislative history not only further strengthens this conclusion but serves to explain the omission of subsection (b) of Section 188 from the 1942 act. We have examined the various committee reports and hearings in connection with the Revenue Act of 1942 and prior revenue acts, particularly with respect to the effective date provisions, the treatment of fiscal year taxpayers, the handling of capital gains and losses of partnerships and common trust funds, and special provisions for taxing partnership income for a year falling under two different laws.

Our study of prior revenue acts reveals that Congress was very much aware of the problems arising generally where taxable periods of taxpayers embraced years covered by different laws. Prior to the Revenue Act of 1934, changes in tax rates were made effective on a calendar year basis. Section 1 of the Revenue Act of 1932 is typical, and reads: "The provisions of this title shall apply only to the taxable year 1932 and succeeding taxable years."

Thus, the taxpayer on a fiscal year basis had to compute his tax liability for a fiscal year covered by two different acts under two sets of rates each time the rates

were changed. In those acts prior to 1934, the partnership Supplement made special provisions, apart from the general rule, for the computation of partnership income where the fiscal year of a partnership was different from the taxable year of the individual partner, and was covered by two different acts. These special provisions subjected partnership income to computation under both acts by an apportionment method on the basis of the number of months of the partnership's fiscal year covered by a particular act, to twelve months.

The difficulties encountered by fiscal year taxpayers in computing their taxes for fiscal years covered by two different laws were largely obviated by the Revenue Act of 1934 and subsequent acts by a change in the general provisions contained in Section 1, which provided that the new act should apply only to taxable year (whether fiscal, calendar, or for an accounting period of less than 12 months) beginning after December 31 of the preceding year. In general, under the 1934 act, a fiscal year ending during the year 1934, for example, was covered entirely by the Revenue Act of 1932. With respect to partnership matters, the method of taxing an individual upon his share of the net distributive income of a partnership having a fiscal year covered by two different acts, was changed by the elimination of the section in the 1932 act and in prior acts, providing for apportionment. Under the new provisions of Supplement F of the 1934 act, the entire distributive income of the partnership for a fiscal year covered by two different laws was taxed to the individual member of the partnership at the rate in effect for the year covered by his individual return in which he reported his distributive share of such partnership income. Section 188 provided that the partner must include in the computation of his individual tax liability, his distributive share of partnership income for any partnership taxable year ending with or within the partner's taxable year. Subdivision (b) of Section 188 provided that partnership net income for its fiscal year beginning in 1933 was to be computed under the 1932 act except for capital gains and losses of the partnership which were to be computed in accordance with Section 117 of the new (1934) act.

This is clearly shown in Report No. 558 of the Senate Committee on Finance [2] (pp. 40 and 41) accompanying the 1934 act, which is set out in the footnote.

In 1936 subsection (b) was omitted from Section 188, but as there was no change in

---

[2] Section 182. Tax on Partners.

This section of the House bill represents a change in section 182 of existing law in two respects: First, because of the change in the policy of treating fiscal-year returns, [Note: fiscal years beginning before January 1, 1934, were to fall entirely under the provisions of prior law] a new section (sec. 188) is carried in the bill to provide specifically a method of taxing the distributive shares of the net income of a partnership for a fiscal year beginning in 1933 and ending within the taxable year of a partner whose taxable year begins on or after January 1, 1934.

This change is discussed under section 188 of the bill. Second, the provisions of existing law which prohibit the partners from using stock losses disallowed to the partnership in computing their individual net incomes have been omitted from the bill. This change was necessary because such provisions applied only to losses on stocks and bonds held for not more than 2 years. The bill, in section 117, treats all capital losses alike whether from stocks, bonds, or other property. Under the proposed method of treating capital gains and losses, a partner will not be permitted to reduce his income by any capital losses disallowed to the partnership. * * *

Section 188. Different Taxable Years of Partner and Partnership.

Subsection (a) applies the *same general rule* for computing the net income of a partner whose taxable year is different from that of the partnership as the rule contained in existing law. However, it is necessary to provide a *special rule* for the computation of the net income of a partner whose taxable year begins after December 31, 1933, if the partnership of which he is a member has a fiscal year beginning in 1933. The net income of the partnership for the fiscal year beginning in 1933 is computed under the Revenue Act of 1932, except that the capital gains and losses of the partnership are computed in accordance with section 117 of the bill, but without regard to the limitation on capital losses. * * * [Italics supplied.]

the method of handling capital gains and losses and no material changes in Supplement F contained in the Revenue Act of 1936, there was no necessity for such a special provision.

In the act of 1938 a number of material changes were made in the handling of capital gains and losses of individuals for income-tax purposes, and this necessitated certain correlative changes in the rules to be applied to partnership income. Report No. 1860 of the House Committee on Ways and Means reads in part as follows (pp. 42 and 43):

"* * * Partnerships are not treated by the revenue act as taxable entities and hence, as such, pay no tax to the Federal Government. Yet they are regarded as business and accounting units and as such are required to compute their net income in the first instance as individuals, distinct from the natural persons composing them, and to file returns in the nature of information returns showing the partnership net income. After the partnership net income has been thus computed, the law requires the individual partners to include their proper portions of such net income, whether or not actually distributed to them by the partnership, in their own returns in computing their net incomes as individuals for tax purposes.

"Section 183 of the bill provides that the net income of a partnership shall be computed in the same manner and on the same basis as in the case of an individual (the same as the rule of the prior acts), with the following exception: (1) The partnership is required to segregate its short-term capital gains and losses and its long-term capital gains and losses, and to compute the net short-term capital gain or loss and the net long-term capital gain or loss, as the case may be. (2) The partnership is further required, after excluding all items of either short-term or long-term capital gain or loss, to compute (a) an ordinary net income which consists of the excess of the gross income over the deductions, or (b) an ordinary net loss which consists of the excess of the deductions over the gross income.

"Section 182 of the bill requires each partner, in computing his own net income,

to include whether or not distribution is made to him, (1) as a part of his short-term gains or losses, his distributive share of the net short-term capital gain or loss of the partnership; * * *.

"The method of treatment provided in these sections of the bill is a logical corollary of the principle that only the partners as individuals, not the partnership as an entity, are taxable persons and is necessary to give the partners as individuals the benefit of the alternative tax in the case of net long-term capital gains, provided in section 117(c), with respect to such gains realized upon the sale or exchange of partnership capital assets.

"It should be noted that this method involves a departure from the principle adopted in the Revenue Acts of 1934 and 1936 to the extent that it enables capital net losses of the partnership in the respective categories to be applied, on the basis of the partners' allocable shares thereof, to offset their individual capital net gains in the same categories. * * *.

*        *        *        *        *        *

"The changes made in section 188(a) are purely mechanical and clerical. *The new provision contained in section 188(b) of the bill is a necessary technical provision to make clear what law is to apply to the computation of the net income of the partnership and the inclusions with respect to the partnership net income, in computing the net income of a partner, in certain cases where the taxable year of the partnership is a fiscal year beginning before January, 1, 1938.* [Italics supplied.]

In considering the Revenue Act of 1942, Congress was concerned over the growing tendency of individual taxpayers and corporations to change to a fiscal year beginning in November. Under the general rule contained in Section 1 of all the revenue acts since 1934, this meant that such a fiscal year taxpayer was in an extremely advantageous position whenever a new revenue act increased taxes because such taxpayer could continue to pay the old (and lower) rates for the entire first year of the new act although 11 months of his taxable year actually fell within the first year of such new act. To correct this abuse, Congress added Section 108 making

official provisions for the taxation of certain fiscal year taxpayers. Speaking of the prior acts, Report No. 2333, House of Representatives, Committee on Ways and Means, (p. 34) reads in part:

"Since 1934, income and profits tax amendments made by the various revenue acts have been applicable with respect to taxable years beginning after December 31 of the previous year. So long as there is no great difference between the rates applicable to one year and those applying to a succeeding year, this method of applying income and profits tax amendments causes no substantial hardship. However, when rates applicable to the new year show drastic increases over those in effect in the previous year, substantial hardships and competitive disadvantages result to calendar year taxpayers as compared to taxpayers on a fiscal year basis. Taxpayers with fiscal years ending within 1942, for example, receive a delayed impact of the net tax rates since the portion of their incomes falling into the new calendar year are taxed at no greater rate than the entire incomes of calendar year taxpayers for the previous year.

"Your committee is convinced that no such distinction in tax treatment should be made simply because of the taxable year chosen by the taxpayer. *It is felt that income received after the close of the previous calendar year should be taxed at the same rate to all taxpayers, regardless of the accounting period employed. The bill contains provisions to effectuate this policy."* [Italics supplied.]

In the same act (1942) Congress made two changes in the capital gains and losses section (117) by decreasing the holding period of capital assets to six months, and by providing in a new subsection (j) for the realization of long-term capital gain where buildings or real estate held for more than six months and used in the trade or business of the taxpayer are sold and the total gains exceed the losses from such sales. Sections 182 and 183 of the partnership Supplement F were changed to reflect the changes in the capital gains and losses provisions. Subsection (b) of Section 188 as it appeared in the 1938 act was entirely omitted. The committee reports contain no comment on the changes in the partnership supplement. On other hand, much is said about the changes made in the method of taxing fiscal year taxpayers to the end that they would not entirely miss the impact of the provisions of the new law by virtue of the fact that their fiscal years began prior to the effective date of such new law.

From the plain language of the various acts and from the legislative history, we conclude that beginning with the Revenue Act of 1934, the special rule with respect to the computation of the net income of a partnership and the inclusions with respect to the partnership net income in computing the net income of a partner, was that the entire distributive income of the partnership for its fiscal year ending in the partner's calendar year was taxed to the individual member of the partnership at the rates and in the manner provided in the law governing the year covered by his individual return. We further conclude that this special rule is entirely logical and practical when Supplement F is read as a whole. The special rule is an exception to the general provision contained in Section 101 of the Revenue Act of 1942 and is specifically contemplated by Section 4 of the Code. We therefore conclude that in the absence (in the case of the 1942 act) of the special provision or exception contained in Section 188(b) of the 1934 and 1938 acts, the income from a partnership whose fiscal year ends in the partner's 1942 (calendar) taxable year is taxable under the same law and at the same rates as the individual partner's income from other sources. To hold otherwise would be to imply the presence in the 1942 act of Section 188(b) as it appeared in the Revenue Act of 1938. We have found nothing in the legislative history of the 1942 act or prior acts to warrant such an implication, and we believe that what legislative history there is supports our conclusions.

It therefore appears to us that the partner's tax liability for his calendar year 1942 was governed by the Revenue Act of 1942; that pursuant to Section 182(b) of that act he was required to include his distributive share of the gain of the partnership, of which he was a member, from

the sale of capital assets held for more than six months; that pursuant to Section 188, such partner must include in his individual return his distributive share of the partnership income for any taxable year of that partnership ending in his taxable year. It was proper for the partner to apply Section 117 as amended by the Revenue Act of 1942 to the sale of the vessels taking place in the partnership taxable year ending in 1942, and report the gain from such sales as a long-term capital gain in his individual return.

Not only does the history of the legislation support the conclusion we have reached, but the purpose of the Congress was made clear by the definite requirement in Section 182(b) of the act of 1942 that the individual partner in making his return should include

"As part of his gains and losses from sales or exchanges of capital assets held for more than 6 months, his distributive share of the gains and losses of the partnership from sales or exchanges of capital assets held for more than 6 months."

To reach any other conclusion it would be necessary not only to read out of the act entirely Section 182(b) which was evidently inserted specifically to govern a partner's return of gains and losses from sales or exchanges of capital assets held for more than six months, but to read into the 1942 act Section 188(b) of the 1938 act, notwithstanding Congress had seen fit not to include it in the 1942 act.

The plaintiff is entitled to recover from the defendant the sum of $41,877.82, together with interest as provided by law.

HOWELL and LITTLETON, Judges, concur.

MADDEN, Judge (concurring).

I agree with the court's decision and opinion. The income which a partner receives or is entitled to from his partnership, is not treated as salary, or corporate dividends paid out of earnings are treated, for tax purposes. The lack of complete juridical entity in the partnership is recognized by permitting and requiring the taxpayer to trace back the money which he receives from the partnership to its source in the partnership, and to state whether it came from earnings or from sales of capital assets. But the time as of which he is regarded as getting it is the time of the partnership's accounting period. In whichever of his, the partner's taxable years this accounting period falls, he must treat the income from his interest in the partnership as taxable, even though, in fact, the income came into the hands of the partnership in a prior year. This is the scheme of the Revenue Act of 1942.

A partner who also had individual capital transactions, in making his return for his taxable year which was the calendar year 1942, would list each of those transactions, and those relating to sales of property held for less than six months would come under one heading, and those of property held for more than six months under another. Then he would, pursuant to the statute, add to or subtract from the sum of each type of transaction his proportion of the aggregate gain or loss which his partnership had in the same type of transaction for its accounting year ending with or within the partner's taxable year. If the partnership's information return had been made according to the provisions of the Internal Revenue Code before the 1942 amendments, what it reported as its composite of, for example, short term capital transactions might be the result of adding items of gain or loss from sales of property held for 3 months, 7 months, and 17 months, all under 18 months and therefore "short term" under the pre-1942 law, but two of which had been held for more than six months, and which, under the 1942 amendments, would belong in the long-term category. The "information" provided by the partnership's information return would be quite useless and it would be necessary to go back of that return and learn the facts about the separate partnership transactions, to see where they would properly fit into the taxpayer partner's return. The Government would, presumably, permit and require the taxpayer, although his taxable year began on January 1, 1942, and, pursuant to Sec. 101 he had to make his return according to the amended law, to insert in his return a separate and special

statement showing the results of the partnership return under the old law, and work those results into his final statement of his taxable income.

It is possible that Congress so intended, but we think it is not probable. When, in 1934 and 1938 Congress meant that, it clearly provided for it in Section 188(b), as the opinion of the Court shows. The omission in the 1942 amendments of a comparable provision would seem to show that Congress intended, as Section 101 said, that taxable years beginning after December 31, 1941, should be governed by the new law; that since the information return of a partnership might well give information as to the partnership income of partners whose taxable year began thereafter and as to other partners whose taxable years began before that date, it was not possible to require, in a single information return, the information necessary to compute the taxes of both kinds of partners, hence no special provision should be made in the statute for the transitory period which would only last for less than one year.

The fact that the partnership return would not be useful, during the transitory period, in computing the tax of at least some of the partners would not have have been an unprecedented situation. In Section 188(b) of the Code in the different forms that it took under the Revenue Acts of 1934 and 1938, its latter form being quoted in the Court's opinion, one partnership return could not have served both for a partner whose taxable year began with the calendar year, and one who had a fiscal year beginning before that time. It would have been necessary, as to one or the other of them, to look behind the partnership return and learn the facts about the partnership transaction.

I agree, therefore, that under Section 101 the plaintiff was permitted and required to make his return under the amended law, and that the fact that during a transitory period, the partnership would not furnish the necessary data for the plaintiff's return is not a sufficient reason for relegating the plaintiff, as partner, to the unamended law when he, as an individual, was governed by the amended law.

WHITAKER, Judge (dissenting).

I cannot agree with the opinion of the majority. It flies in the face of section 188 of the Internal Revenue Code. That section requires the partner, in computing his income, to include therein his distributive share of the partnership net income. And it is plain that the partnership in computing its net income had to compute it according to the law as it was prior to the passage of the Revenue Act of 1942. Section 101 of that Act says that its provisions are "applicable only with respect to taxable years beginning after December 31, 1941." The taxable year of the partnership began some time before December 31, 1941, and, hence, the provisions of the Revenue Act of 1942 did not govern the computation of its net income.

So, the law told this partner to include in his income his distributive share of the partnership net income, and it told the partnership to compute its net income according to the law as it was before the 1942 Act was passed.

What more needed to be said? Partner: include in your return your distributive share of the partnership income; partnership: compute your income according to the law as it was before this Act was passed.

But the majority opinion says, disregard this, throw out the partnership return the law required it to file, cast aside the income that return shows and which the law required the partner to use in computing his income, and figure it on another basis. There is no justification for this.

This partner in computing his own individual income was entitled to the provisions of the Act of 1942, but the partnership was not, and, so far as his income from the partnership was concerned, the partner was governed by the law applicable to it. This the Revenue Act of 1942 definitely said.