[Civ. No. 11755. Third Dist. Aug. 18, 1969.]

WILLIAM S. ANDREWS et al., Plaintiffs and Appellants, v. FRANCHISE TAX BOARD, Defendant and Respondent.

CROCKER-CITIZENS NATIONAL BANK, as Trustee, etc., et al., Plaintiffs and Appellants, v. FRANCHISE TAX BOARD, Defendant and Respondent.

(Consolidated Cases.)

654

William S. Andrews, in pro. per., and for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Edward P. Hollingshead, Deputy Attorney General, for Defendant and Respondent.

JANES, J.—Judgment was entered in favor of respondent Franchise Tax Board on separate causes joined in a suit for refund of state personal income taxes paid by appellants. (Rev. & Tax. Code, § 19082.)[1] The matter was submitted to the superior court upon an agreed statement of facts.

### Facts: The Andrews Case

Appellant William S. Andrews was a member of a partnership which had adopted a *fiscal* year ending August 31. In November 1958 and March 1959, the partnership sold certain properties which had been held more than five but not more than ten years, showing a long-term partnership gain, amounting to $77,390.52. In the partnership return for the year ended August 31, 1959, 40 percent of the gain was reported, amounting to $30,956.20. In filing their individual joint personal income tax return for the *calendar* year 1959, Mr. Andrews and appellant Camilla A. Andrews similarly reported their one-third share of the gain, amounting to $10,318.73. This was the amount to be taken into account under section 18151 of the Revenue and Taxation Code as it

---

[1]Unless otherwise specified, all statutory references herein are to the Revenue and Taxation Code.

read prior to its amendment in 1959.[2] Respondent issued a determination increasing the amount of the Andrews' taxable income to 50 percent of the installment reported for the year 1959, based upon the provisions of section 18151 as amended by the Statutes of 1959 (ch. 830, p. 2868, in effect June 8, 1959),[3] and assessed a deficiency in the amount of $126.35 personal income tax for the calendar year 1959. This deficiency was paid by the Andrews, and a claim for refund was timely filed by them. The claim was denied by respondent. An appeal was taken to the State Board of Equalization, which sustained respondent's determination.

## Facts: The Austin Case

In 1956, Perry G. M. Austin sold real property which he had held more than ten years and elected to report the gain through use of the installment method, reporting as income a portion of the installment payments received each year. (§ 17578.) The amount of the gain taken into account on Mr. Austin's personal income tax return was 30 percent, which was the amount prescribed by section 18151 as it read prior to its amendment in 1959.[4] This was also the percentage reported on an installment paid to him in 1960. Respondent issued a deficiency assessment for the year 1960 in the amount of $1,315.61, based upon the application of section 18151 as amended in 1959.[5] Mr. Austin is now deceased. Appellants Camilla Austin and Crocker Citizens National Bank, as trustee under Mr. Austin's will, have succeeded to his interest. As such successors they paid the assessed deficiency

---

[2]As effective June 6, 1955, section 18151 provided: "In the case of any taxpayer, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing taxable income:

"One hundred percent if the capital asset has been held for not more than one year;

"Eighty percent if the capital asset has been held for more than one year but not for more than two years;

"Sixty percent if the capital asset has been held for more than two years but not more than five years;

"Forty percent if the capital asset has been held for more than five years but not for more than ten years;

"Thirty percent if the capital asset has been held for more than ten years."

For purposes of this appeal, all capital gain may be deemed "recognized." (See, § 18032.)

[3]As effective June 8, 1959, section 18151 provided in relevant portion: "If for any taxable year the net long-term capital gain exceeds the net short-term capital loss, 50 percent of the amount of such excess shall be a deduction from gross income. . . ."

[4]See fn. 2, *supra.*

[5]See fn. 3, *supra.*

and filed a timely claim for refund with respondent. The claim was denied. An appeal was taken to the State Board of Equalization, which sustained respondent's determination.

## Question Presented

Broadly stated, the issue before us is whether the capital gains for which deficiencies were assessed to the Andrews and Mr. Austin were taxable in accordance with section 18151 as it read before its amendment in 1959, or whether those gains were taxable under section 18151 as it read after such amendment.

It should be noted that under section 18151, as enacted in 1955 (fn. 2, *supra*), varying percentages of capital gain were *excluded altogether* from inclusion in a taxpayer's report of gross income (which, minus deductions, yields "taxable" income). (See §§ 17071-17073.) In contrast, under the 1959 amendment of section 18151 (fn. 3, *supra*), *all capital gain is included* in reported gross income (§ 17071) and then, if the net long-term capital gain exceeds the net short-term capital loss, 50 percent of such excess is reported as a *deduction* from gross income.

## Law: The Andrews Case

■ As stated above, in the Andrews case the properties sold were the assets of a partnership in which Mr. Andrews was a partner. The properties were sold in November 1958 and in March 1959. Those sales occurred in a single taxable year of the partnership, which extended from September 1, 1958, to August 31, 1959. However, Mr. Andrews reported income on a calendar year basis. Consequently, as to him, the first sale took place in a different taxable year than the second. The record does not tell us whether Mr. Andrews' distributive share from the November sale was received by him in 1958 or 1959.

Section 17861 provided then as now that "[i]n computing the taxable income of a partner for a taxable year, the inclusions required . . . shall be based on the . . . gain . . . of the partnership for any taxable year of the partnership ending within or with the taxable year of the partner." Under section 17852, a partner's individual tax return must account for his distributive share of the partnership's capital gains. The return of the partnership itself must likewise report that partner's distributive share. (§ 17932.) The manifest purpose of section 17861 is to permit a reconciliation or balancing of

the distributive shares reported in the partnership return with those reported in the returns of the individual partners, even if the partnership and its members have different income reporting years. Accordingly, the Andrews' tax return for the calendar year 1959 was required to, and did, take both sales into account. Whether it took them into account to the proper extent is in dispute.

The 1959 amendment of section 18151 was effective June 8, 1959. Under section 17034,[6] it applied to "taxable years beginning after December 31st, of the year preceding enactment. . . ." Thus the original 1955 enactment of section 18151 applied to the taxable year of the partnership ending August 31, 1959. The crucial issue is whether the 1955 version of section 18151 applied to Mr. Andrews' distributive share as well or whether, because his taxable year began after December 31, 1958, the 1959 amendment governed the partnership capital gains received by him.

Section 17853, subdivision (a) declares: "The character of any item of . . . gain . . . included in a partner's distributive share . . . shall be determined *as if such item were realized directly from the source from which realized by the partnership*. . . ." (Italics ours.) Under section 17853, the taxable or non-taxable character of Mr. Andrews' gains was to be determined without regard to the partnership conduit. This left section 17034 operable without exception. Pursuant to section 17034, the 1959 amendment of section 18151 applied to the Andrews' return for the 1959 calendar year.

The inconsistent circumstance that in the partnership return taxable income was determined by the earlier law is of no substantive consequence insofar as the Andrews' liability is concerned. The partnership itself was neither an income taxpayer nor subject to being so taxed. (§§ 17004, 17851, 17862.) The 1955 version of section 18151, which only applied in the case of any "taxpayer" (a prefatory phrase omitted in 1959) was applicable to the partnership return because section 17854 stated that " [t]he taxable income of a partnership shall be computed in the same manner as in the case of an individual . . . ," and "taxpayer" is defined as including "any individual" (§ 17004). Since the partnership was

---

[6]In 1959, as at present, section 17034 provided: "Unless otherwise specifically provided the provisions of any law effecting changes in the computation of taxes shall be applied only in the computation of taxes for taxable years beginning after December 31st, of the year preceding enactment and the remaining provisions of any such law shall become effective on the date it becomes law."

not subject to an income tax, the partnership return required by section 17932 was purely informational. In reporting "gross income," which included capital gains (§§ 17071, 18031) to the extent of 40 percent thereof as required by former section 18151, the partnership return reported 60 percent less gross income from capital gains than would have been the case if that return had been subject to the 1959 amendment. This 60 percent difference, which would have been proportionately reflected if Mr. Andrews' distributive share had been reported under the 1959 law, would have presented the Franchise Tax Board with at most a data reconciliation problem. Since the board assessed a deficiency, it was a reconciliation problem of which the board was obviously aware.

On the significance of the partnership aspect of the Andrews' appeal, respondent and the Andrews present varying views of the import of *Dockendorff* v. *United States* (Ct.Cl. 1949) 84 F.Supp. 372. In view of the dispositive nature of section 17853 of California's Revenue and Taxation Code, it is unnecessary to adjudicate the parties' conflicting approaches. Suffice it to say that *Dockendorff* is of dubious authority. Unlike the partnership provisions of this state's code, *Dockendorff* was able to draw on a "Supplement F" of the federal Revenue Act of 1934. That "Supplement F" specifically provided that "the entire distributive income of the partnership for a fiscal year covered by two different laws was taxed to the individual member of the partnership at the rate in effect for the year covered by his individual return in which he reported his distributive share of such partnership income." (84 F.Supp. at p. 380.) We are assisted by no such express provision in the Revenue and Taxation Code.

### Law : The Austin Case

 Sections 17577 and 17578 (installment sales), as well as present and former section 18151 (capital gains treatment), were patterned after federal tax statutes on the same subjects. (See, 26 U.S.C.A., §§ 453(a), 453(b), and 1201(b), and accompanying historical notes.) The interpretation and effect which the federal courts and administrative tribunals have given the federal statutes is therefore relevant, whether such decisions were rendered before or after the enactment of the state laws. Their persuasiveness depends upon whether those decisions preceded or postdated the California laws and whether they were handed down by a federal court or executive agency. (See, *Misasi* v. *Jacobsen* (1961) 55 Cal.2d 303, 308 [10 Cal.Rptr. 850, 359 P.2d 282] ; *Holmes* v. *McColgan*

(1941) 17 Cal.2d 426, 430 [110 P.2d 428] ; *Rihn* v. *Franchise Tax Board* (1955) 131 Cal.App.2d 356, 360 [280 P.2d 893] ; *Meanley* v. *McColgan* (1942) 49 Cal.App.2d 203, 209 [121 P.2d 45] ; 50 Am.Jur., Statutes, § 460, pp. 475-476.)

What few precedents there are even in the prolific field of federal tax litigation have consistently held that, when proceeds of an installment sale are received by the taxpayer in a year during which a different revenue law is in effect than was in force the year of the sale, the law existing at the time of such receipt determines whether those proceeds are capital gains or ordinary income. (See, *Snell* v. *Commissioner* (5th Cir. 1938) 97 F.2d 891; *Weller* v. *Brownell* (M.D. Pa. 1965) 240 F.Supp. 201, 209-210; *Zola Klein* (1964) 42 T.Ct. 1000, 1003-1005.) In substance, those authorities decide how much income is taxable income by applying the law which was in effect when the installment payment was received, not the law as it was at the time of the sale. This is the precise issue in the Austin case.

A state of facts similar to those in Austin was involved in *Harry B. Golden* (1942) 47 B.T.A. 94. There the taxpayer made an installment sale in 1936, when the revenue law provided that only 30 percent of capital gains was taxable. In 1938, when the taxable percentage had been statutorily increased to 50 percent, he received an installment payment. The administrative Board of Tax Appeals held that the 1938 income was subject to the statute in effect that year. Citing *Snell* v. *Commissioner, supra,* the board said: "If petitioner had elected to be taxed in that year [1936] upon the entire gain from the sale, he would have been permitted to take into account only 30 percent of the gain. He chose, however, to spread the tax over the period of installments; and, in doing so, *he took the risk* that the rate of tax might change *or that the proportionate amount of capital gain to be taken into account might change upward or downward.*" (Italics ours.) (Accord, *Lamar* v. *Granger* (W.D. Pa. 1951) 99 F.Supp. 17, 42; but see, Emory, *The Installment Method of Reporting Income: Its Election, Use, and Effect* (1968) 53 Cornell L.Rev. 181, 259-261.)

The federal treatment is in harmony with *Cullinan* v. *McColgan* (1947) 80 Cal.App.2d 976 [183 P.2d 115]. The issue there was whether attorney fees which accrued before the date the state Personal Income Tax Act first applied (January 1, 1935), but which were collected after that date, were taxable or nontaxable. In holding that the fees were

taxable, this court said (p. 982) : "The admitted fact that the income was earned prior to 1935, is immaterial inasmuch as the taxpayer's books at all times were kept on a cash basis. So far as he was concerned it was not income to him until paid." Thus, like the federal cases, *Cullinan* measures the amount of taxable income by the law applicable to the tax year in which payment is received. The fact that the federal decisions involve "installment" payments does not distinguish them. For purposes of deciding which law applies to a particular payment, the key similarity between *Cullinan* and the federal cases is that all deal with payments received during a tax year covered by a new revenue law.

The taxability of the installment payment to Mr. Austin in 1960 was therefore governed by the 1959 amendment.

The judgment against each appellant is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.