[Civ. No. 20459.   Second Dist., Div. Three.   Mar. 8, 1955.]

HUGO RIHN, Appellant, v. FRANCHISE TAX BOARD, Respondent.

George H. Zeutzius for Appellant.

Edmund G. Brown, Attorney General, and Edward Sumner, Deputy Attorney General, for Respondent.

ASHBURN, J. pro tem.\*—Action to recover money paid under protest as a state income tax upon tips received by plaintiff-appellant while working as a waiter at the Biltmore Hotel, Los Angeles, during the year 1951. The sole question is whether a waiter's tips may be taxed as income under the Personal Income Tax Law of this state. (Rev. & Tax. Code, § 17001 et seq.) The trial court answered that question in the affirmative. Plaintiff, as appellant, contends that tips are gratuities, gifts, and as such not taxable. The case was submitted upon stipulated facts; it appeared that plaintiff collected wages of $2,106.05 and received tips aggregating $1,573. There is nothing in the record to suggest that the employer received any portion of the tips or credited same on wages, or that appellant was required to report their receipt to his employer.

The applicable statute is section 17101, Revenue and Taxation Code. It says: "Gross income includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." The crucial phrases are ". . . gains, profits, and income derived from . . . compensation for personal service, of whatever kind and in whatever form paid . . ." and "gains or profits and income derived from any source whatever."

---

\*Assigned by Chairman of Judicial Council.

This section is interpreted by Personal Income Tax Regulation 17101(b), which, so far as pertinent, is as follows: "Commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, and pensions or retiring allowances paid by private persons or by the United States are income to the recipients; as are also marriage fees, baptismal offerings, sums paid for saying masses for the dead, and other contributions received by a clergyman, evangelist, or religious worker for services rendered. However, so-called pensions awarded by one to whom no services have been rendered, by either a taxpayer or taxpayer's beneficiary, are mere gifts or gratuities and are not taxable."

Our section 17101 of the statute is copied from section 22(a), Internal Revenue Code (26 U.S.C.A. (1948 ed.) § 22(a)), as it stood before the 1954 revision, with one immaterial departure.[1] And our regulation 17101(b) is in the same phrasing as Federal Income Tax Regulations 111, section 29.22(a)-2, down to and including the word "tips"; in other particulars it is substantially the same so far as the problem presented in this case is concerned.

The federal courts have declared that the statute (Int. Rev. Code, § 22(a)) uses broad language as an "effective means to indicate the purpose to include all items that are constitutionally income." (*Commissioner of Int. Rev.* v. *Linde,* (C.C.A., 9) 213 F.2d 1, 6.) In *United States* v. *Robertson,* (C.C.A., 10) 190 F.2d 680, 682, the court said: "Sec. 22(a) broadly defines gross income and by its sweeping terms it is evident that Congress intended that income should be taxed comprehensively and in so doing intended to exercise to the 'full measure' its constitutional power. . . . Under this Section all income is taxable unless specifically excluded by other provisions of the statute. Sec. 22(b)(3), excludes gifts from the income tax provisions but in view of the general purpose to tax all income, specific exemptions should be strictly construed. . . . The practical test which the courts have applied in cases where income has been claimed to have been a gift is to determine if the income was received gratuitously and in exchange for nothing."

And the use of the word "tips" in the regulation has been held to be permissible interpretation of the broad statutory language. The current of federal decisions is uniform in this

---

[1]The text of the federal statute and regulation herein mentioned is set forth in a footnote on pages 191 and 192 of 10 A.L.R.2d.

direction. *Roberts* v. *Commissioner of Int. Rev.*, (C.C.A., 9) 176 F.2d 221, is directly in point. It deals with tips received and retained by a taxicab driver, who also collected a salary from his employer. The court said at page 223: ''The essential question is whether tips are income.'' In rejecting the argument that they are gifts, it also said: ''From the very beginning of the practice, it was evident that, whether considered from the standpoint of the giver or the recipient, it lacked the essential element of a gift,—namely, *the free bestowing of a gratuity without consideration.* Despite apparent voluntariness, there is an element of compulsion in tipping. . . . In tipping, the financial advantage is conferred on the basis of *a consideration which is related to service.* This makes it clearly income. . . . So it is quite plain that the contention here made that tips, in general, are merely the result of the donor's exhibitionism and are given merely to satisfy the egotistical instinct of the giver, cannot overcome the unalterable fact that, so far as the recipient is concerned, —the petitioner here,—he received tips as an incident to the service which he rendered to his patrons. They were paid concurrently with the fare as a token of better service received. They are gain derived from his labor as a taxicab driver, i.e., income from the practice of a calling.''

In *United States* v. *Burdick*, (C.C.A., 3) 214 F.2d 768, a conviction for fraudulent income tax return was affirmed. Defendant was Executive Clerk of the New Jersey State Senate and received moneys from various persons whose contributions were designed to help them in legislative matters. The failure to report these receipts formed the basis of the criminal charge. The court said at page 771: ''The testimony fully established that defendant's unreported receipts, which he treated as 'gifts' were compensation for services rendered or to be rendered, even though the payments were voluntarily made. They could, at the least, be broadly identified as 'gratuities' or 'tips' and it is well-settled that such receipts are not gifts, but taxable income.''

In *Williams* v. *Jacksonville Terminal Co.*, 315 U.S. 386 [62 S.Ct. 659, 86 L.Ed. 914]: ''The court had before it the question of whether the tips received by red caps could be counted as a part of the minimum wage under the Fair Labor Standards Act (29 U.S.C.A. 201 et seq). It was held that they could and that legally speaking such tips were wages under the agreement between the employer and em-

ployee.''[2]   The Williams opinion contains this observation at page 398: ''A tip to a red cap is compensation for service. It is customarily given and always expected when such service is rendered.'' (See also *Bateman* v. *Commissioner of Int. Rev.* (1936), 34 B.T.A. 351, 367; *Stephen* v. *Commissioner of Int. Rev.*, 11 T.C.M. 157; and 10 A.L.R.2d 191, Anno. ''Tips as Taxable Income.'')

■   Where, as here, the federal and state tax statutes and regulations are substantially identical, the interpretations and effect given them by the federal courts are highly persuasive.

■   In *Holmes* v. *McColgan*, 17 Cal.2d 426, 430 [110 P.2d 428], it is said: ''The legislature has consistently followed the federal provisions generally in the Personal Income Tax Act. This policy makes available to the state a ground work of relevant federal experience and judicial pronouncements. 'It is a cardinal principle of statutory construction that where legislation is framed in the language of an earlier enactment on the same or an analogous subject, which has been judicially construed, there is a very strong presumption of intent to adopt the construction as well as the language of the prior enactment. . . . A similar principle applies where a statute is patterned after legislation of another state, or of the federal government, or, indeed of a foreign country, which has been judicially construed in the jurisdiction of its enactment.' '' *Innes* v. *McColgan*, 47 Cal.App.2d 781, 784 [118 P.2d 855]: ''The California Personal Income Tax Act [Deering's Gen. Laws, 1937, Act 8494] in many respects closely follows the provisions of the Federal Income Tax Law. The definitions of gross income are similar in both enactments so we may presume that the California law was adopted with the definition in mind that the federal courts had placed on gross income. (*Union Oil Associates* v. *Johnson*, 2 Cal.2d 727 [32 P.2d 360, 43 P.2d 291, 98 A.L.R. 1499].) Therefore, we will look to the decisions of the federal courts to determine the definition of gross income in cases identical with or similar to the one we have here.'' The court, in *Meanley* v. *McColgan*, 49 Cal. App.2d 313, 317 [121 P.2d 772], puts the matter thus: ''The provisions of our statute applicable to the present problem were copied from the federal statute. Under such circumstances the federal decisions constitute not only argumentative authority, but are conclusive on the proper interpretation of our statute.''

[2]The quoted language is taken from *California Drive-In Restaurant Assn.* v. *Clark*, 22 Cal.2d 287, p. 296 [140 P.2d 657, 147 A.L.R. 1028].

California cases are not opposed to the federal rulings on this matter of tips.

*Hartford Acc. & Indem. Co.* v. *Industrial Acc. Com.*, 41 Cal.App. 543 [183 P. 234], holds that tips received by a waiter and retained by him are properly included as earnings in computing an award under the Workmen's Compensation Act. This result was reached without the aid of any regulation such as 17101(b), *supra*. The court said at page 545: "We are satisfied that the phrase 'other advantages received by the injured employee as part of his remuneration and which can be estimated in money' is broad enough to permit the inclusion of tips in the 'average weekly earnings' of such employee upon which the amount of his award is to be calculated." And at page 546, referring to *Sloate* v. *Rochester Taxi Co.*, 221 N.Y. 491 [116 N.E. 1076]: "In the latter case the court quite aptly says: "The employee could not have received the tips if the employer had not put him in the way of getting them, and we may conclude that the tips were an advantage received from the employer similar in effect to board, lodging, or rent furnished in addition to the wages paid. . . . The usual tips have come to be considered as a part of the cost of entertainment at a hotel, upon a sleeper or public conveyance, and it is realized both by the person paying and receiving them that it is a part payment of the wages which the employer compels the persons served to pay. In effect, therefore, the employer and not the employee alone is benefited by the patrons of the company. . . . The court should treat these tips in the same manner as the employer and employee treat them, as a part of the compensation to be received by the employee for the services rendered the employer—a part of the wages, a part of the average annual earnings of the employee.' We are satisfied with the reasoning and conclusion of the foregoing authorities and with the action of the respondent herein which was based thereon."[3]

The fact that regulation 17101(b) (adopted pursuant to Rev. & Tax. Code Ann., § 19253) declares tips to be "compensation for personal services" strengthens the reasoning of the case of *Hartford Acc. & Indem. Co.* v. *Industrial Acc. Com., supra.* "Although not necessarily controlling, as where

---

[3]This is also the holding in *Powers' Case*, 275 Mass. 515 [176 N.E. 621, 75 A.L.R. 1220]; the case is annotated in 75 A.L.R. 1220, from which it appears that the authorities are almost uniformly to the same effect.

made without the authority of or repugnant to the provisions of a statute, the contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." (*Coca-Cola Co.* v. *State Board of Equalization*, 25 Cal.2d 918, 921 [156 P.2d 1].) (*Cf. Bodinson Mfg. Co.* v. *California Emp. Com.*, 17 Cal.2d 321, 325 [109 P.2d 935].)

*California Drive-In Restaurant Assn.* v. *Clark*, 22 Cal.2d 287 [140 P.2d 657, 147 A.L.R. 1028], held valid an order of the Industrial Welfare Commission prohibiting the deduction of waitresses' tips in computing the required minimum wage. This was because "the purpose sought to be obtained by the fixing of minimum wages" was to provide compensation "adequate to supply the necessary cost of proper living and to maintain the health and welfare of the employees" and "that purpose may be thwarted if tips may be included in the minimum wage" (p. 299). The court added this: "The foregoing discussion does not mean that tips may not be considered wages under certain circumstances such as, computation of compensation under workmen's compensation laws. (*Hartford Acc. & Indem. Co.* v. *Industrial Acc. Com.*, 41 Cal.App. 543 [183 P. 234]; 29 Cal.L.Rev. 774; 75 A.L.R. 1223, and generally *Williams* v *Jacksonville Terminal Co.*, *supra*.) An employer may permit his employee to retain the tips and the arrangement may be that they shall be compensation, but section 3 is aimed at the evils above mentioned in connection with *minimum wages*, and merely because tips may be termed wages under certain circumstances does not mean that they may be counted as part of the minimum wage where to do so would contravene the policy of section 3 and permit the evils there denounced." This case does not rule upon the question presented at bar and is not opposed to the federal decisions which do pass upon it.

*Anders* v. *State Board of Equalization*, 82 Cal.App.2d 88 [185 P.2d 883], does not involve the exact issue here presented. It dealt with a retail sales tax matter. The court stated the problem at page 91 as follows: "The question to be determined is whether tips received by waitresses in a restaurant on account of their services, to the extent of their minimum wages fixed by law, become part of the gross receipts of the employer for sales of tangible personal property, to wit, food and drinks, in view of the contract of employment

to the effect that such tips shall be credited to the payment of minimum wages as a part of the waitresses' compensation for services, and that they were actually so credited." And the answer at page 96: "It follows that the tips in this case, to the extent of the minimum wages due, *were received by the waitresses for performance of duties incident to their employment,* and that, by agreement or mutual understanding they became the property of plaintiffs and were credited by the waitresses upon plaintiffs' obligation to pay minimum wages. Such tips therefore became, to that extent, part of plaintiffs' gross receipts from sales of tangible personal property, and hence properly taxable under the Retail Sales Tax Act." (Emphasis added.)

*Herbert's Laurel-Ventura, Inc.* v. *Laurel Ventura Holding Corp.,* 58 Cal.App.2d 684 [138 P.2d 43], contains considerable language to the effect that "whatever be the motive of the giver, his tip remains a gift to the donee" (p. 694). But the question decided was whether the tips received by a "car-hop" waitress should be included in the basis for computation of a percentage rental payable by a lessee to his lessor. The answer was in the negative. It will be noted that the controversy arose between lessor and lessee, no one else being interested, and no tax matter was involved. The case is explained in a footnote on page 224 of 176 F.2d 221 (*Roberts* v. *Commissioner of Int. Rev., supra*) as follows: "Cases such as *Herbert's Laurel-Ventura, Inc.* v. *Laurel Ventura Holding Corp.* (1943), 58 Cal.App.2d 684, 694 [138 P.2d 43], dealing with the ownership of tips as between the employer and the employee are not very helpful. They do not touch the problem before us. For there, the court was concerned mainly with the question whether the tips of employees belonged to the lessor (employer) or the lessee, under a percentage rental contract of a drive-in restaurant. It held that they belonged to neither. And the language used in determining the matter is not an authoritative determination of the nature of tips as taxable income under the Internal Revenue Act."

The California decisions are not opposed to *Roberts* v. *Commissioner of Int. Rev., supra,* and other federal authorities above discussed, nor do they indicate any error in the administrative construction of the Personal Income Tax Law.

Appellant relies upon *Magruder* v. *Yellow Cab Co. of D. C., Inc.,* (4 C.C.A.) 141 F.2d 324. That was an action to recover contribution taxes paid by the cab company under the Social

Security Act. The cab drivers leased their cabs and kept their fares and tips, paying the company stipulated sums as rent. The cab company paid nothing to the drivers. It was held entitled to recover moneys paid on account of the drivers' earnings. Reference was made in the opinion to Social Security Tax Regulations 106, sections 402.228(e) and 403.228, which "expressly exclude from the denotation of wages: 'Tips or gratuities paid directly to an employee by a customer of an employer and not accounted for by the employee to the employer'" (p. 325). The case is not in point here, but it does serve to emphasize the fact that different statutes, with differing objectives, may include or exclude tips as earnings. The fact is recognized in *California Drive-In Restaurant Assn. v. Clark*, 22 Cal.2d 287, 299 [140 P.2d 657, 147 A.L.R. 1028], quoted above. And it is made clear in *Williams* v. *Jacksonville Terminal Co., supra*, 315 U.S. 386, 404 [62 S.Ct. 659, 86 L.Ed. 914]. At page 407: "We can therefore examine the Fair Labor Standards Act with the safe assumption that the word 'wages' has no fixed meaning either including or excluding gratuities."

As heretofore indicated the income tax laws reach out for whatever is constitutionally includable as income, the customary tip properly may be so classified and this has been done in California. There is but one further contention that requires consideration.

Appellant argues that regardless of the merits of the foregoing views when considered apart from sections 350, subdivision (e), and 356, California Labor Code, those enactments require a holding that tips cannot be treated or taxed as income. The pertinent portion of section 350 is as follows: "As used in this article, unless the context indicates otherwise: . . . (e) 'Gratuity' includes any tip, gratuity, money, or part thereof, which has been paid or given to or left for an employee by a patron of a business over and above the actual amount due such business for services rendered or for goods, food, drink or articles sold or served to such patron."

Section 356: "The Legislature expressly declares that the purpose of this article is to prevent fraud upon the public in connection with the practice of tipping and declares that this article is passed for a public reason and cannot be contravened by a private agreement. As a part of the social public policy of this State, this article is binding upon all departments of the State." These sections do not stand alone. The heart of the statute is found in sections 351 and 352

which provide: "§ 351. Every employer or agent who collects, takes, or receives any gratuity or a part thereof, paid, given to, or left for an employee by a patron, or who deducts any amount from wages due an employee on account of such gratuity, or who requires an employee to credit the amount, or any part thereof, of such gratuity against and as a part of the wages due the employee from the employer, shall keep posted in a conspicuous place at the location where his business is carried on, in a place where it can easily be seen by the patrons thereof, a notice, in lettering or printing of not less than forty-eight-point black-face type, to the following effect: (a) If not shared by the employees, that any gratuities paid, given to, or left for employees by patrons go to and belong to the business or employer and are not shared by the employees thereof. (b) If shared by the employees, the extent to which gratuities are shared between employer and employees." "§ 352. The notice shall also state the extent to which the employees are required by the employer to accept gratuities in lieu of wages or the extent to which the employee is required to accept and credit gratuities against wages."

It will be noted that this article 1 of chapter 3 does not relate to taxation; that its declared purpose is "to prevent fraud upon the public in connection with the practice of tipping." These sections were considered in the California Drive-In Restaurant case, *supra*. The court observed on page 292 of 22 Cal.2d that "The purpose and object sought to be accomplished by legislation is an important factor in determining the legislative intent." And, concerning these sections: ". . . the statute is concerned exclusively with tipping in respect to its relation to the public . . ." (p. 292). Again: "The statute does not purport to cover the special field of tipping in regard to its effect on the minimum wage law. It is aimed at the protection of the public against fraud." (P. 293.)

Not only is this portion of the Labor Code limited in its purpose as stated but it is specifically confined by its terms to operation within "this article." Sections 350-356 constitute article 1 of chapter 3 of part 1, division 2 of the Labor Code. Division 2 covers "Employment Regulation and Supervision"; part 1 thereof treats of "Compensation"; chapter 3, of "Privileges and Perquisites," of which article 1 embraces "Gratuities." By no sound process of reasoning could this part of the code be deemed to be concerned with

the tax status of tips. It is to be harmonized with the Revenue and Taxation Code (*People* v. *Darby,* 114 Cal.App.2d 412, 424 [250 P.2d 743]; Civ. Code, §§ 23.2-23.5), each being limited to its own declared sphere of influence. And the phrase ''as used in this article'' carefully limits the field of application of sections 350-356 to the matter of tipping in relation to the public.

*People* v. *McEntyre,* 32 Cal.App.2d Supp. 752, 758 [84 P.2d 560], is pertinent. The validity of section 405 of the Labor Code was under consideration; it requires that any property put up by an employee or applicant as a part of the contract of employment shall be deemed a bond and be held in trust as such. At page 758: ''Section 350 of the Labor Code, upon which the argument against the validity of section 405 is partly based, provides that, 'as used in this article,' the terms 'employer' and 'employee' shall have the meanings there stated. Those definitions can have no effect on section 405, for it is not a part of the article in which section 350 appears, to which, by the terms of section 350, its definitions are limited.'' In this connection see also *Hard* v. *Hollywood Turf Club,* 112 Cal.App.2d 263, 268-269 [246 P.2d 716].

■ Appellant's counsel stresses the concluding sentence of section 356, which is: ''As a part of the social public policy of this State, this article is binding upon all departments of the State.'' He argues that the Franchise Tax Board is a department of the state and hence obligated to treat tips as gifts, thus precluding their taxation. The short and sufficient answer is that sections 350-356 are binding upon all departments of the state when operating within the field delineated by that article of the Labor Code, and only when there operating.

■ The inclusion of tips within the definition of income in regulation 17101 (b) is a valid classification and the lower court correctly so ruled.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.