[Nos. B114114, B117076. Second Dist., Div. Seven. Dec. 21, 1998.]

JOHN E. WERTIN et al., Plaintiffs and Respondents, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

COUNSEL

Daniel E. Lungren, Attorney General, David S. Chaney and Felix E. Leatherwood, Deputy Attorneys General, for Defendant and Appellant.

Voss, Cook & Thel, James G. Damon and M. Edward Mishow for Plaintiffs and Respondents.

**OPINION**

**LILLIE, P. J.**—The Franchise Tax Board (FTB) appeals from an adverse judgment after a court trial in an action brought by John and Barbara Wertin (the Wertins) for a refund of assessed delinquent taxes and interest thereon. The trial court found the FTB's issuance of a notice of proposed assessment of a tax deficiency without reviewing the Wertins' tax returns for the relevant year rendered the FTB's assessment invalid. On appeal, the FTB argues the trial court erred in applying federal case law and standards to a question of California tax law, under which it asserts it was not required to review the taxpayers' actual returns before issuing the notice of proposed deficiency. The FTB also contends the trial court improperly awarded interest to the Wertins because they failed to file a claim for interest and thus failed to exhaust their administrative remedies.

The FTB also appeals from a postjudgment order awarding the Wertins their attorneys' fees under Revenue and Taxation Code section 19717. The trial court found under Revenue and Taxation Code section 19717 the FTB's position in the Wertins' tax refund case was not "substantially justified," thus entitling the Wertins to an award of fees. The trial court also awarded

fees in excess of the statutory rate of $75 per hour on the grounds of the limited availability of qualified attorneys for the issue litigated. On appeal, the FTB contends its position had a reasonable basis in both law and fact and was thus "substantially justified," and the Wertins failed to demonstrate they were entitled to enhanced attorneys' fees.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1983, plaintiff John E. Wertin was a partner in a California general partnership known as Pacific Securities (Pacific) and a shareholder in two subchapter S corporations known as TNPC, Inc., and Christina Securities (the corporations).[1] These entities timely filed their 1983 federal and California tax returns for the tax year ending December 31, 1983. The Internal Revenue Service (IRS) later issued to Pacific a notice of final partnership administrative adjustments in which the IRS disallowed certain of Pacific's losses and deductions. As a result, the IRS claimed additional taxes and interest were due.

Pacific disputed the IRS's disallowance, and filed a proceeding in the United States Tax Court seeking a readjustment of the disallowed items. The tax court denied any relief, and on October 26, 1992, the IRS notified plaintiffs certain changes and adjustments were being made to their joint federal 1983 tax returns on account of their interests in the entities. The IRS enclosed form 1092C explaining the calculation of the adjustments. Plaintiffs then notified appellant FTB by letter dated December 18, 1992, of the IRS adjustments to their federal return, and enclosed with their letter to the FTB a copy of the IRS's form 1092C.

On January 12, 1993, the FTB sent a form letter to the Wertins advising them of its receipt of their December 18, 1992, letter and requesting copies of (1) the initial federal audit report detailing the initial federal computations, (2) the settlement federal audit report detailing the final federal computations, and (3) the Wertins' complete state tax returns for the years audited. The Wertins responded by letter dated January 27, 1993, and advised the FTB that items Nos. 1 and 2 requested by the FTB had never been provided to the Wertins by the IRS. The Wertins advised the FTB that instead of the "audit reports" requested by the FTB, the IRS had sent the Wertins the form 1092C explaining the IRS's position on the necessary tax adjustments. With respect to item No. 3, the Wertins advised the FTB their

---

[1]Partnerships and subchapter S corporations do not pay taxes themselves. Instead, they file tax returns solely to report income, and all taxes are paid by the partners and shareholders of such corporations. (See, e.g., Int.Rev. Code, § 6031, 26 U.S.C. § 6031; and Rev. & Tax. Code, § 18637.)

1983 state return had been timely filed and was therefore in the FTB's possession. The Wertins advised the FTB if the FTB did not have a copy of their return, they would be able to retrieve it from storage with sufficient advance notice.

On May 4, 1993, the FTB sent the Wertins a letter advising them their response to its January 12, 1993, letter was incomplete. In spite of the enclosure of the IRS form 1092C, the FTB advised the Wertins "your letter [of January 27, 1993] did not provide us with any information on the changes made by the IRS." Although the IRS form 1092C specifically referred to tax year 1983, the FTB claimed it did not know which tax year the Wertins referred to in their letter because their letter did not specifically refer to tax year 1983. The FTB also advised the Wertins that although their 1983 returns had been timely filed with the FTB, the FTB did not keep old tax returns and requested a copy of the return.

The Wertins responded on May 20, 1993, objecting to the FTB's letter, and advised the FTB that the Wertins' December 18, 1992, letter had advised that the IRS adjustments set forth in the IRS's October 26, 1992, notice were final, the form 1092C provided by the Wertins was sufficient compliance with the FTB's request for IRS "audit reports" and that the Wertins would attempt to locate their 1983 state tax return, which was in storage.

On June 11, 1993, the FTB issued a notice of proposed assessment. The notice stated, "notice is hereby given that [the FTB] propose[s] to assess a deficiency for the taxable year shown below." The notice estimated the Wertins' 1983 income, made adjustments, and assessed an additional $147,262 against plaintiffs for tax year 1983 and interest thereon of $230,369.69. The notice further informed plaintiffs the assessment notice was then being issued because of the impending expiration of the statute of limitations. The FTB stated the adjustment was based upon the "federal audit report submitted by the taxpayer" and the income on the notice had been calculated based upon "your net tax liability since we did not receive a copy of your return as requested."

Because the FTB had issued the assessment without reviewing plaintiffs' tax returns, plaintiffs filed a protest with the FTB on August 6, 1993. The Wertins asserted the statute of limitations within which the FTB could issue a proposed assessment based on the federal audit had expired because the FTB had failed to mail a valid notice of assessment within six months of their December 18, 1992, letter. The Wertins protested both the tax assessed and the interest accrued thereon. In September 1994, the FTB corrected the amounts claimed to be owed, and advised plaintiffs $87,786 of additional taxes, plus $158,310.26 of interest, were owed.

On November 21, 1994, plaintiffs paid the additional taxes to the FTB under protest and commenced the within action on June 2, 1995. Their November 21, 1994, letter to the FTB clearly stated "this letter constitutes a claim for refund" of the amount of taxes the Wertins were paying under protest. The Wertins further incorporated by reference into their letter of November 21, 1994, their communication of August 6, 1993 (the Protest). In protest, the Wertins stated they objected both to the taxes *and interest* sought to be assessed by the FTB.

The matter was tried to the court on November 26 and 27, 1996. The Wertins argued the FTB failed to issue a valid notice of assessment because the FTB had not reviewed the Wertins' tax return prior to issuing the assessment and thus had not validly "determined" the amount of tax due as required by statute. (Rev. & Tax. Code, former § 18583; *Scar* v. *C. I. R.* (9th Cir. 1987) 814 F.2d 1363.) As a corollary argument, they also contended because the assessment was not valid, it was not served within the six-month statutory period and was therefore time-barred. (Rev. & Tax. Code, former § 18586.3.)

The trial court issued a statement of decision in which it held pursuant to Revenue and Taxation Code former sections 18451 and 18586.3, a taxpayer had 90 days to report to the FTB after the IRS had made a final determination changing or correcting the taxpayer's tax liability for a prior year; after that, the FTB had 6 months within which to send the taxpayer a notice of proposed deficiency adjustment. Therefore, if the FTB did not mail a valid notice of proposed assessment to the Wertins within six months, the statute of limitations of Revenue and Taxation Code former section 18586.3 expired and the FTB could not collect the taxes.

The trial court found the key factor in resolving whether the notice of proposed assessment was valid was whether the FTB had validly *determined* there was a deficiency due. (See Rev. & Tax. Code, § 19033; Int.Rev. Code. § 6212(a).) The trial court concluded the FTB's notice of proposed assessment was invalid because a deficiency could not be "determined" without a review of the Wertins' tax return, and the notice of proposed assessment disclosed on its face it had been prepared without such a review. (*Scar* v. *C. I. R., supra,* 814 F.2d 1363; see also *Kong* v. *Commissioner* (1990) 60 T.C.M. (CCH) 696.) Finally, the trial court disagreed with the FTB it was the taxpayers' duty to maintain and produce a copy of their return for the tax year in question because no statutory authority imposed such a duty on the taxpayer. The trial court ordered the FTB refund to the Wertins the taxes and interest previously paid by the Wertins, and also awarded the Wertins prejudgment interest at the rate of 10 percent per annum.

Thereafter, the Wertins moved postjudgment for an award of attorneys' fees under Revenue and Taxation Code section 19717 as the prevailing parties in their refund case. Section 19717 permits an award of attorneys' fees to the "prevailing party," defining the "prevailing party" as "any party to any proceeding described in subdivision (a) . . . that: [¶] (i) Establishes that the position of the State of California in the civil proceeding was not substantially justified . . . ." (Rev. & Tax. Code, § 19717, former subd. (c)(2)(A)(i).) The Wertins argued the FTB's position was not substantially justified because the *Scar* decision made it clear no notice of deficiency could be issued without a resort to the taxpayer's returns, because in such case a deficiency had not been "determined" within the meaning of the relevant statute. (Rev. & Tax. Code, former § 18583.) The FTB maintained the facts of *Scar* did not apply and thus reference to a taxpayer's return was not necessary in order for it to "determine" the amount of taxes due.

The Wertins produced a copy of an FTB internal memorandum dated April 16, 1991, analyzing the effect of the *Scar* decision on FTB notices of proposed assessment. The memorandum recognized the holding of *Scar* required a "determination" must be made before a deficiency notice could be issued. The memorandum then analyzed federal court cases applying *Scar* in order to ascertain a workable standard of "determination." In particular, the memorandum discussed *Estate of Yaeger* v. *C. I. R.* (2d Cir. 1989) 889 F.2d 29, which stated the test for determining whether the notice's purpose was accomplished was whether "taxpayer reasonably knew or should have known that the deficiency notice was directed to the taxpayer, that a deficiency determination was made, the taxable year involved, and the amount of the deficiency." (*Id.* at p. 35.) In addition, the memorandum cited *Marvel* v. *United States* (10th Cir. 1983) 719 F.2d 1507, 1513, which held notices containing technical defects are valid where the taxpayer has not been prejudiced or misled by the error and is afforded a meaningful opportunity to litigate its claims.

The FTB memorandum concluded "the *Scar* case has a minimal impact" on the FTB procedures and practices, finding the *Scar* case was a "taxpayer's defense" and need not be considered in sending out deficiency notices. The memorandum stated, however, "[t]he most obvious conclusion that can be drawn from *Scar* . . . is that it is ·imperative that we use reasonable standards when issuing assessments. By avoiding estimates whenever possible we avoid the problem. By demonstrating that the FTB took every step to avoid estimating (requesting information/returns in a timely manner), we can support the position that a determination was made based on all available information." The memorandum concluded with a recommendation that the FTB eliminate language on the notices indicating they were prepared

without benefit of a tax return. The memorandum stated such language "affirmatively states that we <u>have not</u> made a determination."

The Wertins also submitted the declaration of their attorney, James G. Damon, a partner of Voss, Cook & Thel. Damon stated in his declaration he had specialized in civil litigation and the fees and costs incurred were at the prevailing market rates for the kind and quality of services furnished in light of the costs of living in the Los Angeles area. Damon also stated he believed the attorneys' fees and costs were elevated by the FTB's refusal to settle the case, in spite of plaintiffs' offers.

The trial court found the FTB's position was not substantially justified because the FTB did "not comply with the requirement of the *Scar* case which requires the FTB to review the tax return prior to issuing a notice of deficiency. Because the FTB's violations of the required procedures [were] so clear, its decision to pursue plaintiffs without first examining the tax return cannot be substantially justified." With respect to enhanced fees, the trial court found the Wertins had produced evidence establishing their attorneys' fees were within market rates for the kind and quality of services offered, and the limited availability of qualified attorneys. The trial court pointed out the FTB had failed to provide any evidence the fees were unreasonable or too much time was spent on any particular task.

The FTB timely appeals the judgment and order entered in favor of the Wertins.

## DISCUSSION

On appeal, the FTB raises two issues relating to the tax refund case: First, it contends its notice of proposed assessment was validly issued because the federal precedent upon which the trial court relied is not controlling, and thus it was not required to review the taxpayers' actual returns before issuing a notice of proposed deficiency. Second, the FTB contends the trial court improperly awarded interest to the Wertins because they failed to file a claim for interest and thus failed to exhaust their administrative remedies. With respect to the attorneys' fee award, the FTB argues the Wertins failed to exhaust their administrative remedies by filing an appeal with the State Board of Equalization and are therefore not entitled to fees under Revenue and Taxation Code section 19717. The FTB further argues the trial court erred in awarding the Wertins' attorneys' fees in excess of the statutory rate of $75.

I

## STANDARD OF REVIEW

Our consideration of the question of whether the FTB was required to review the Wertins' return prior to computing and preparing the notice of proposed assessment is a matter of statutory interpretation and thus a question of law. (*R & P Capital Resources, Inc.* v. *California State Lottery* (1995) 31 Cal.App.4th 1033, 1036 [37 Cal.Rptr.2d 436].) Whether the Wertins properly requested a refund of interest in their refund claim made to the FTB turns on the resolution of disputed facts and the trial court's ruling will be upheld if supported by substantial evidence. (*Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 872-874 [197 Cal.Rptr. 925].) We review the trial court's order awarding attorneys' fees under Revenue and Taxation Code section 19717 for abuse of discretion. (*Lennane* v. *Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1189 [59 Cal.Rptr.2d 602].)

II

## THE FTB'S NOTICE OF PROPOSED ASSESSMENT WAS INVALIDLY ISSUED

A. *The Trial Court Properly Relied on Analogous Federal Authority to Require Resort to the Tax Return in Computing a Deficiency.*

 Former Revenue and Taxation Code section 18451 required a taxpayer to notify the FTB when the IRS made changes or corrections to the taxpayer's gross income or deductions.[2] Once notified by the taxpayer, the FTB in turn must, within six months from the date of such notification, issue a notice of proposed assessment based upon the IRS's action. (§ 18586.3.)[3]

---

[2]In 1993, the pertinent portions of the Revenue and Taxation Code were repealed and replaced with new statutes at different section numbers, effective January 1, 1994. All references hereinafter are to the Revenue and Taxation Code, as effective in 1993, unless otherwise noted. However, where necessary, we refer to the 1993 version as "former" Revenue and Taxation Code.

Former section 18451 provided in pertinent part: "If the amount of gross income or deductions for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the Commissioner of Internal Revenue . . . such taxpayer shall *report such change or correction . . . within 90 days after the final determination of such change or correction . . . .*" (Stats. 1967, ch. 1479, § 7, p. 3466.)

[3]Former section 18586.3 provided in pertinent part: "If a taxpayer is required to report a change or correction by the Commissioner of Internal Revenue . . . a notice of proposed

Pursuant to section 18583, a notice of assessment may be mailed if the FTB determines a deficiency exists.[4]

Similarly, under federal tax law, a notice of deficiency may be mailed only after a determination of deficiency has been made. (26 U.S.C. § 6212(a).)[5] In *Scar* v. *C. I. R., supra,* 814 F.2d 1363, the Ninth Circuit interpreted this provision to mean where the IRS had not reviewed the taxpayer's return, a "determination" had not been made for purposes of the statute. In *Scar,* the IRS's notice of assessment of a deficiency stated ". . . since your original income tax return is unavailable at this time, the income tax is being assessed at the maximum tax rate of 70 %." (*Id.* at p. 1365.) The Ninth Circuit found this notice defective because the plain statutory language of Internal Revenue Code section 6212(a) contemplated a review of the taxpayer's return. Because the notice revealed on its face the IRS had not reviewed the taxpayer's return in arriving at its deficiency calculation, no valid "determination" was made. (814 F.2d at p. 1368.)

Although former section 18583 contains the "determine" nomenclature comparable to 26 United States Code section 6212(a), no California case has similarly analyzed what is required to assess a deficiency under California tax law. However, where a California tax statute uses the same language as a federal statute, federal case law is persuasive on the proper interpretation to be given to the California statute. (*Rihn* v. *Franchise Tax Board* (1955) 131 Cal.App.2d 356, 360 [280 P.2d 893]; see also *Meanley* v. *McColgan* (1942) 49 Cal.App.2d 203, 209 [121 P.2d 45] [strong public policy favors interpreting similar statutes dealing with the same subject matter in the same way].) Thus, *Scar* is instructive on the issue of whether the FTB's notice was valid.[6] As *Scar* is factually very similar to the instant action, and the federal and California statutes are very similar, the trial court did not err in finding under *Scar* that the FTB's notice was invalid.

deficiency assessment resulting from such adjustments may be mailed to the taxpayer within six months from the date when such notice . . . is filed with the Franchise Tax Board . . . ." (Stats. 1959, ch. 414, § 8, p. 2353.)

[4]Former section 18583 provided: "If the Franchise Tax Board determines that the tax disclosed by the original return is less than the tax disclosed by its examination, it shall mail notice or notices to the taxpayer of the deficiency proposed to be assessed." (Stats. 1951, ch. 70, § 1, p. 252.)

[5]Internal Revenue Code section 6212(a), provides in pertinent part: "If the Secretary determines that there is a deficiency in respect of any tax imposed . . . he is authorized to send notice of such deficiency to the taxpayer . . . ."

[6]Appellant has cited *People* v. *Hagen* (Cal.App. E016805) review granted November 12, 1997 (S063524) for the proposition *Rihn* is not controlling. However, subsequent to the briefing and oral argument on this appeal, the California Supreme Court affirmed the Court of Appeal in *Hagen.* (*People* v. *Hagen* (1998) 19 Cal.4th 652 [80 Cal.Rptr.2d 24, 967 P.2d 563].) In *Hagen,* the Supreme Court reiterated the principle federal tax statutes are "unusually strong persuasive precedent on [the] construction of our own [tax] laws." (*Id.* at p. 661.) Thus, in no way did *Hagen* abrogate the principles enunciated in *Rihn.* The FTB's argument assumes that

Nevertheless, in spite of the clear holding of *Scar,* the FTB raises numerous arguments in an attempt to validate its notice. The FTB maintains that by over-emphasizing the word "determine," the Wertins have misconstrued former section 18583 and abandoned the norms of statutory construction. (See *Lennane* v. *Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].) The FTB further contends the trial court's ruling and reasoning are at odds with long-standing precedent placing the burden on the taxpayer to demonstrate the FTB is incorrect. (See, e.g., *In re Engelbrecht* (1986) [1984-1986 Transfer Binder] Cal. Tax Rptr. (CCH) ¶ 401-251, p. 24,082 [FTB relied on information other than return in calculating deficiency].) Thus, the FTB argues, *Scar* does not stand for the proposition the burden is on the taxing agency; rather, the holding of *Scar* is designed to prevent the taxing authority from creating tax liability out of thin air.

We agree *Scar* is intended to require the taxing authority to rely on some concrete data in computing a deficiency, but we do not find Engelbrecht controlling in the circumstance where the taxpayer has agreed to provide a return but has not yet done so before the six-month statute of former section 18586.3 expired. In *Engelbrecht,* the taxpayer's returns had been destroyed only six years after the tax year in question and were thus not available for a deficiency assessment. In that case, the FTB had no choice but to rely on the taxpayers' net federal tax liability and use that as a basis to calculate the deficiency assessment. (*In re Engelbrecht, supra,* Cal.Tax Rptr. ¶ 401-251, p. 24,082.) Here, the Wertins offered to produce their tax returns, and in fact did so. In addition, *Engelbrecht* is both factually and legally distinguishable on other grounds. *Engelbrecht* concerned the timeliness of the taxpayers' notice to the FTB of the IRS audit, not whether the deficiency had been properly computed or whether the notice was valid. Most significantly, however, *Engelbrecht* predates *Scar* and therefore does not support the proposition the FTB need not refer to the taxpayer's return.

Finally, we note the FTB cannot complain that it did not seek an extension of the statute of limitations from the Wertins while they produced their returns, which it was their duty to do. (See §§ 19133 [duty of taxpayer to produce returns], 19067 [extension of statute of limitations].) We will not excuse the FTB's failure to follow these statutory guidelines and condone its attempt to collect taxes when it has not followed the legislatively mandated procedures.

---

because the interpretation of federal tax statutes is not "binding" the trial court's reliance on *Scar* was automatically wrong. However, even though *Scar* is not "binding," it is "unusually strong persuasive precedent" and an entirely appropriate basis for the trial court's ruling.

## B. *California Statutory Law Also Requires Resort to the Tax Return in Computing a Deficiency*

The FTB also argues the Wertins' narrow interpretation of the word "determines" as set forth in *Scar* creates disharmony within the Personal Income Tax Law of California's Revenue and Taxation Code. (§ 17001 et seq.) Specifically, the FTB contends the statutory scheme discussed above has as its clear objective a streamlining of the process of adjusting a taxpayer's tax liability following a federal audit. For example, the FTB is entitled to forego an independent audit and rely on the IRS's determination of a taxpayer's deficiency. (See, e.g., *Montgomery Ward & Co.* v. *Franchise Tax Bd.* (1970) 6 Cal.App.3d 149, 171 [85 Cal.Rptr. 890].) Along these lines, the FTB argues the California scheme creates special statutes of limitation to reopen an inquiry into "closed" tax years because the federal audit may conclude long after California's four-year statutes had run. Thus, because it has long been the practice of the FTB to destroy returns in the ordinary course of business after the close of three years (§ 19530), the California scheme recognizes the federal audit determination may be the only source of information in determining whether a deficiency exists. In conformity with this statutory scheme, the FTB argues *Scar* cannot control whether the notice of proposed assessment is valid. Although the FTB did not review the Wertins' tax returns, it did review information on file in its records regarding their 1983 tax liability in order to arrive at its deficiency calculation. Essentially, the FTB argues this form of "substantial compliance," should permit the FTB to issue a valid assessment without necessity of digging up tax returns.

We disagree. The California statutory scheme, like the federal scheme, requires the taxing agency to consult the taxpayer's return prior to issuing a deficiency notice. The plain language of the California statutes compels this result; indeed, they are more explicit than the federal scheme in their reference to tax returns. Former section 18583 stated, "[i]f the Franchise Tax Board determines that the *tax disclosed by the original return* is less than the tax disclosed by its examination . . ." (italics added) it may issue a deficiency notice. The definition of deficiency requires reference to a tax return if one was prepared: "(a) For purposes of this part, the term 'deficiency' means the amount by which the tax imposed by this part exceeds the excess of— [¶] (1) The sum of— [¶] (A) The amount shown as the tax by the taxpayer *upon his return,* if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus . . . ." (Former

§ 18591.1, italics added.)[7] The rationale for such a definitional constraint is to provide some grounding for the FTB's calculation of the taxpayer's tax liabilities, and the plain meaning of these statutes is to build the taxpayer's tax return into the definition of deficiency to prevent the kind of haphazard resort to arbitrary outside sources and inaccurate deficiency computations, as in this case and in *Scar*.

Moreover, we reach this result by following the norms of statutory construction, not by departing from them. (*Lennane* v. *Franchise Tax Bd.*, *supra*, 9 Cal.4th at p. 268.) ■ *Lennane* restates the general rules of construction: the intent of the Legislature is paramount, and its intent is to be ascertained from the plain meaning of the language used in the statute. Statutes are to be construed together with other statutes forming part of the same scheme. (*People* v. *$1,930 United States Currency* (1995) 38 Cal.App.4th 834, 843 [45 Cal.Rptr.2d 322] [statutes are to be construed by harmonizing the parts with the statutory scheme of which they are a part].) We do not agree with the FTB reading the requirement of a review of the tax return into a deficiency assessment results in the "insertion of qualifying provisions inconsistent" with the meaning of the statute. The statutes themselves explicitly refer to the taxpayer's return. (See, e.g., *Campbell* v. *Zolin* (1995) 33 Cal.App.4th 489, 497 [39 Cal.Rptr.2d 348].) Nor does our interpretation extend the provisions of the statutes at issue beyond the clear import of the language used. If the Legislature had wanted to define "deficiency" without using the words "tax return," it could have done so. (See *Edison California Stores* v. *McColgan* (1947) 30 Cal.2d 472, 476 [183 P.2d 16].)

Finally, our interpretation of California tax deficiency statutes is consistent with *Scar* and federal standards. *Scar* held the plain language of 26 United States Code section 6212(a) mandated the IRS make a determination of the deficiency before mailing out the notice. The Ninth Circuit was concerned the IRS might issue notices of deficiency which constituted no more than arbitrary demands. The result of waiving the clear statutory command would be the burdening of taxpayers with disproving allegations which had no substantial foundation. (*Scar* v. *C. I. R.*, *supra*, 814 F.2d at p. 1369.) *Scar*'s rationale applies equally here. To permit the FTB to do what it did in this case—issue a demand for a deficiency which was based upon nothing which the taxpayers had the resources to verify—would similarly circumvent the California tax scheme. While an expedited process may be contemplated, we do not believe the Legislature intended expeditious

[7]The federal system likewise defines a deficiency in terms of the taxpayer's return. (26 U.S.C. § 6211.)

handling of later-year tax corrections to be based on nothing more than speculation.

## C. *Requiring the FTB to Review the Tax Return Does Not Impermissibly Shift the Burden of Proof*

Finally, the FTB maintains that by permitting it to issue a deficiency notice without resort to the taxpayer's return, the burden of proof remains where it should be—with the taxpayer. (See *Honeywell, Inc.* v. *State Bd. of Equalization* (1982) 128 Cal.App.3d 739, 744 [180 Cal.Rptr. 479] [burden of proof is on taxpayer seeking refund].)

· However, we do not find either *Scar* or the relevant California statutes contemplate a change in the burden of proof. *Scar* considered the effect its ruling had on the burden of proof and pointed out in the usual case a deficiency has been "determined" before notice is sent out. However, where the face of the notice belies the presumption of regularity, *Scar* held it was both reasonable and necessary for the Commissioner to demonstrate compliance with the statute. (*Scar* v. *C. I. R., supra,* 814 F.2d at p. 1369, fn. 9.) *Scar* is thus concerned with procedural regularity, and requiring the government to consult the taxpayer's return (if one is available) prior to preparing a deficiency notice is consistent with the language of the statute and imposes no great burden on the government. Furthermore, the FTB's argument is incongruous because requiring resort to the tax return does not shift the burden of proof in a refund case, because a deficiency notice would not be prepared in the context of a refund suit, because it would be prepared prior to any suit for refund by a taxpayer.

Furthermore, the facts of this case demonstrate the FTB produced no evidence the Wertins actually *refused* to produce their tax returns.[8] Instead, the Wertins informed the FTB the returns were in storage and would probably take some time to locate. Indeed, the FTB has only itself to blame for its dilemma of facing an expiring statute of limitations with no return. At the outset, with only six months to make a determination, the FTB loitered, demanding documents that did not exist and asserting the Wertins had not mailed what it needed. We find it hard to believe the FTB had never seen IRS form 1092C before and did not know what it was or what to do with it; recalculations of state income tax based upon federal disallowance of deductions are routine. However, rather than handle this matter expeditiously—as it claims the statutory scheme permits it to do—the FTB dawdled, then panicked as the statutory bar loomed. Instead of seeking an extension of the

---

[8]In fact, the record indicates the returns were produced to the FTB sometime subsequent to the notice of proposed assessment.

statutory period from the Wertins, who were under a duty to produce their returns, the FTB ignored statutory directives and computed their tax deficiency out of thin air. The arbitrariness and incorrectness of its determination are apparent from the fact it later had to correct its figures.

In summary, we hold where a taxpayer's return is available, the FTB may not assess or collect a deficiency without relying on the return.

## III

### THE TRIAL COURT PROPERLY AWARDED INTEREST

■ The taxpayer has 60 days from the date of mailing of the notice of proposed assessment to file a protest with the FTB. (Former § 18590.)[9] The protest must contain a written statement of its grounds. Failure to file a written claim results in a failure to exhaust administrative remedies and is a bar to a later suit for refund. (§ 19322;[10] *Mercury Casualty Co.* v. *State Bd. of Equalization* (1986) 179 Cal.App.3d 34, 39 [224 Cal.Rptr. 781].) If the taxpayer is dissatisfied with the FTB's ruling as stated in the notice of action, the taxpayer may either appeal to the State Board of Equalization or pay the deficiency and file a claim for a refund. If the FTB has failed to mail its notice of action to the taxpayer, after six months the taxpayer may bring a refund action. (§§ 19382, 19385.)

The FTB contends the Wertins did not comply with these procedures because the board has "no record of receiving and denying any claim for refund for the 1983 tax year for payment of accrued interest." Furthermore, the FTB contends the Wertins admitted at trial they did not file a claim for refund. (See § 19322.) Thus, because the Wertins failed to file a claim for refund of interest before filing their suit for refund, the trial court improperly awarded interest.

We disagree. The Wertins' November 21, 1994, letter to the FTB clearly states "this letter constitutes a claim for refund" of the amount of taxes, $87,786.00, the Wertins were paying under protest. The Wertins further incorporated by reference into their letter their communication of August 6,

---

[9]Section 18590 provided: "Within 60 days after the mailing of each notice of additional tax proposed to be assessed the taxpayer may file with the Franchise Tax Board a written protest against the proposed additional tax, specifying in the protest the grounds upon which it is based."

[10]Section 19322 provides in relevant part "Every claim for refund shall be in writing, shall be signed by the taxpayer . . . and shall state the specific grounds upon which it is founded."

1993 (the Protest) which contained the Wertins' statement they objected both to the taxes *and interest* sought to be assessed by the FTB. This complies with the statute, which requires no particular form; the claim only must be in writing and state the grounds therefor. Indeed, the purpose of the statute is to put the board on notice of a claim, and the Wertins' letter of November 21, 1994, adequately accomplishes such notice to the board. (*Newman* v. *Franchise Tax Bd.* (1989) 208 Cal.App.3d 972, 979 [256 Cal.Rptr. 503].)

## IV

### THE TRIAL COURT PROPERLY AWARDED ATTORNEYS' FEES

A. *The FTB's Position Was Not Substantially Justified*

On appeal, the FTB argues its position was substantially justified because it was based upon published California legal rulings permitting the FTB to rely on a federal audit in issuing a deficiency notice. (See, e.g., *Montgomery Ward & Co.* v. *Franchise Tax Bd., supra,* 6 Cal.App.3d at p. 170; *Hall* v. *Franchise Tax Board* (1966) 244 Cal.App.2d 843, 848 [53 Cal.Rptr. 597].) The FTB also argues the Wertins failed to exhaust their administrative remedies before filing suit, and thus are not entitled to attorneys' fees. (§ 19717, subd. (b)(1).)[11]

1. *The FTB's Position Was Not Substantially Justified*

The FTB's first argument sidesteps the issue, which is whether the FTB was permitted to issue a deficiency notice without reference to the taxpayer's tax returns, not whether the FTB could rely on a federal audit. (See, e.g., *Montgomery Ward & Co.,* v. *Franchise Tax Bd., supra,* 6 Cal.App.3d 149.)

California cases have defined a "substantially justified" position to mean one which is justified to a degree that would satisfy a reasonable person, or " 'has a " 'reasonable basis both in law and fact.' " ' " (*Lennane* v. *Franchise Tax Bd., supra,* 51 Cal.App.4th at pp. 1188-1189.) The FTB also relies on

---

[11]The FTB cites to the 1997 version of the statute, which was in effect at the time of plaintiffs' motion for attorneys' fees. That subdivision provided: "(b)(1) A judgment for reasonable litigation costs shall not be awarded under subdivision (a) unless the court determines that the prevailing party has exhausted all administrative remedies available to that party under this part, including the filing of an appeal as provided in Section 19324." Section 19324 provides for the finality of FTB action unless the taxpayer, within 90 days, takes an appeal to the State Board of Equalization.

cases decided under the Federal Equal Access to Justice Act (28 U.S.C. § 2412),[12] which mirrors the language of section 19717, similarly hold the test is whether the government's position was justified in both fact and law to the degree that would satisfy a reasonable person. (*Jankovich v. Bowen* (6th Cir. 1989) 868 F.2d 867; *Ellis v. United States* (Fed. Cir. 1983) 711 F.2d 1571.)

We find the use of the word "reasonable" in explaining "substantially justified" implies an objective standard that does not depend on an analysis of the subjective motivations of the government in taking the position it did. Thus, we need not consider the FTB's internal memorandum to reach our conclusion the FTB was not substantially justified in issuing its notice of proposed assessment without reviewing the taxpayer's returns when it knew those returns were available, had the authority to order their production, and could have sought an extension of the statute of limitations so that the state's position would not be prejudiced.[13] Furthermore, the similarity in language between the federal statute and the California statute, plus the fact both taxation schemes define deficiency with reference to a taxpayer's return, should have been a red flag to the FTB. Instead, the FTB issued a notice of assessment which later turned out to be incorrect and which reflects the haste and careless manner in which it was prepared. The FTB's practices circumvent the objective of *Scar,* which is to protect the taxpayer from arbitrary and capricious assessments.

2. *Exhaustion of Administrative Remedies by Appeal to the State Board of Equalization Was Not a Requirement of the Statute During the Relevant Time Period*

The FTB argues because the Wertins failed to exhaust their administrative remedies by appealing to the State Board of Equalization as required by section 19717, subdivision (b)(1), they are not entitled to an award of attorneys' fees. However, at the time of the commencement of this action in 1995, section 19717 did not contain a requirement of an appeal to the State Board of Equalization prior to the commencement of a refund suit. Rather, the statute provided only that the party must "exhaust[] the administrative

---

[12]Title 28 United States Code section 2412 provides for an award of attorneys' fees to the prevailing party in litigation with the United States unless the court finds the position of the United States was "substantially justified." Similarly, in federal tax cases, fees may be awarded unless the government's position was substantially justified. (26 U.S.C. § 7430(c)(4)(B)(i).)

[13]The FTB's internal memorandum indicates it believed a sort of "substantial compliance" standard would prevail; thus, if it were in the ballpark, it could ignore the clear mandates of the statutory language.

remedies . . . under this part." (Former § 19717, subd. (b)(1).) The statute was amended in 1996 to add the provision cited by appellant. Appellant's argument is thus that the statute should be applied retroactively to the Wertins' claim for attorneys' fees.

■ However, statutes are normally applied prospectively. This rule applies to both "procedural" and "substantive" statutes because both types of statutes may affect the legal consequences of past transactions to deprive a party of substantive rights. (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 289 [279 Cal.Rptr. 592, 807 P.2d 434], overruled on other grounds, *Pro-Family Advocates* v. *Gomez* (1996) 46 Cal.App.4th 1674 [54 Cal.Rptr.2d 600]; *Russell* v. *Superior Court* (1986) 185 Cal.App.3d 810, 815-816 [230 Cal.Rptr. 102].) Under this analysis, some statutes are therefore considered purely "procedural" because they do not affect substantive rights. In that case, the statute may be applied to cases filed before its enactment. (185 Cal.App.3d at p. 816.) ■ However, in the case of the Wertins' refund action, substantive rights would be lost by requiring them to have taken an appeal that was not mandated at the time they commenced their refund action. Therefore, we decline to apply section 19717, subdivision (b)(1), as it now reads and reject appellant's argument.

B. *The FTB Has Failed to Demonstrate Error in the Award of Fees in Excess of the Statutory Rate*

The FTB argues the Wertins' attorneys were not entitled to fees in excess of the statutory rate of $75 per hour. Section 19717 provides attorneys' fees shall not be in excess of $75 unless the court determines that an increase in the cost of living, or a special factor, such as the limited availability of qualified attorneys for the issue litigated justifies award of a higher rate. (§ 19717, subd. (c)(1)(B)(iii).)[14] The FTB neglects to factually develop this argument, however, as it does not explain why the Wertins' attorneys did not qualify for an enhanced fee under the statute. The trial court relied on the declaration of James Damon in finding the Wertins' attorneys had met the statutory prerequisite for an enhanced fee; the FTB offered no evidence to

---

[14]We refer to the version of section 19717 in effect in 1995, the year in which the Wertins' lawsuit was commenced. Section 19717, subd. (c)(1)(B)(iii), provided in relevant part the prevailing party is entitled to "[r]reasonable fees paid or incurred for the services of attorneys in connection with the civil proceeding, except that those fees shall not be in excess of seventy-five dollars ($75) per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding, justifies a higher rate."

the trial court to rebut the Wertins' showing. The FTB makes a similar omission on appeal by failing to establish why error occurred. Because the FTB bears the burden on appeal of demonstrating the trial court's order was incorrect, we find no error.

## DISPOSITION

The judgment and order are affirmed. Respondents to recover their costs on appeal.

Johnson, J., and Woods, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 31, 1999.